Stephen Walters, OSB No. 801200
swalters@oregonlawcener.org
Beth Englander, OSB No. 980190
benglander@oregonlawcenter.org
Edward Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
Kelsey Heilman, OSB No.140348
kheilman@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave, Suite 812
Portland, OR  97204
(503) 473-8324

Gerald Lunn, OSB No. 153768
glunn@oregonlawcenter.org
OREGON LAW CENTER
230 NE 2nd Ave, Suite F
Hillsboro OR 97124
(503) 640-4115

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JENNIFER BOOTH and DAVID BECKER, on behalf of themselves and all others similarly situated, and HELPS,<br><br>Plaintiffs,<br><br>v.<br><br>BETSY DEVOS, in her capacity as Secretary of the U.S. Department of Education; STEVEN MNUCHIN, in his capacity as Secretary of the U.S. Department of the Treasury; and ANDREW SAUL, in his capacity as Commissioner of U.S. Social Security Administration, | Case No. 6:20-cv-01433<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>**Civil Rights Action (Fifth Amendment to U.S. Constitution – Due Process and Equal Protection); Administrative Procedure Act (5 U.S.C. § 706)** |

Defendants.

Plaintiffs file this complaint against the Secretary of the U.S. Department of Education, the Secretary of the U.S. Department of the Treasury, and the Commissioner of the Social Security Administration. Plaintiffs allege as follows:

## I.    INTRODUCTION

1.    Plaintiffs Jennifer Booth and David Becker, on behalf of themselves and a class of all persons in Oregon who are similarly situated, and Plaintiff Help Eliminate Legal Problems for Senior and Disabled ("HELPS"), challenge defendants' unlawful reduction of Social Security benefits to repay federal student loan debt.

2.    Under the Debt Collection Act of 1982, a federal agency may collect an outstanding debt by "administrative offset", which means interception of a payment owed to the debtor by a different federal agency. Pub. L. 97-365. The Treasury Offset Program ("TOP") conducts such administrative offsets.

3.    Generally, Social Security benefits are exempt from attachment by creditors. 42 U.S.C. § 407(a). However, The Debt Collection Improvement Act of 1996 subjected Social Security benefits to administrative offsets, including for purposes of recovering federal student loan debt owed to the Department of Education. Pub. L. 104-134.

4.    Since 2002, the first full year that TOP conducted administrative offsets of Social Security benefits, the number of Social Security beneficiaries subjected to administrative offset

to repay federal student loan debt has increased more than 500%.[1]

5.      In 2019, TOP offset the Social Security benefits of 4,893 Oregonians—Plaintiffs Jennifer Booth and David Becker among them—to repay federal student loan debt. These offsets pushed Plaintiffs and thousands of similarly situated Oregonians into (or deeper into) poverty.

6.      Administrative offsets of Social Security benefits to repay federal student loan debt violate Plaintiffs' right to equal protection and due process under the Fifth Amendment to the U.S. Constitution, and are unlawful agency actions under Section 706 of the Administrative Procedure Act.

7.      Plaintiffs June Booth and David Becker, on behalf of themselves and all other similarly situated Oregonians, and Plaintiff HELPS seek declaratory and injunctive relief against Betsy DeVos, in her official capacity as Secretary of the U.S. Department of Education; Steven Mnuchin, in his official capacity as Secretary of the U.S. Department of the Treasury; and Andrew Saul, in his official capacity as Commissioner of the Social Security Administration, to end administrative offsets of Oregonians' Social Security benefits to repay federal student loan debt.

8.      In addition, Plaintiffs June Booth and David Becker, on behalf of themselves and all other similarly situated Oregonians, seek restitution for amounts unlawfully intercepted from their Social Security benefits to repay federal student loan debt.

      ///

---

[1] Government Accountability Office, "Older Americans: Inability to Repay Student Loans May Affect Financial Security of a Small Percentage of Retirees", at 17 n.26 (Sept. 2014), *available at* https://www.gao.gov/assets/670/665709.pdf.

## II.    JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331, because Plaintiffs' claims arise under the Fifth Amendment to the U.S. Constitution and Section 706 of the Administrative Procedure Act.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to these claims occurred in the District.

## III.    PARTIES

11.    Plaintiff Jennifer June Booth is a resident of Bend, Oregon, who has had her Social Security benefits offset to repay federal student loan debt since July 2019.

12.    Plaintiff David Becker is a resident of Portland, Oregon, who has had his Social Security benefits offset to repay federal student loan debt since April 2018.

13.    Plaintiff Help Eliminate Legal Problems for Senior and Disabled ("HELPS") is a 501(c)(3) nonprofit organization headquartered in Salem, Oregon.

14.    Defendant Betsy DeVos is the Secretary for the U.S. Department of Education, the agency that administers the federal student financial aid program, 20 U.S.C. § 1071 *et seq*. Secretary DeVos is sued in her official capacity.

15.    Defendant Steven Mnuchin is the Secretary for the U.S. Department of the Treasury, the agency that administers the Treasury Offset Program through the Bureau of the Fiscal Service. Secretary Mnuchin is sued in his official capacity.

16.    Defendant Andrew Saul is the Commissioner for the Social Security Administration, the agency that oversees Social Security retirement and Social Security Disability Insurance benefits. Commissioner Saul is sued in his official capacity.

IV.    **FACTUAL ALLEGATIONS**

A.    **Student Loans Burden an Increasing Number of Oregonians**

1.    **Educational Debt Has Exploded Across the Country**

17.    As of late 2019, nearly one third of adults in the U.S. had incurred at least some debt for their education, primarily in the form of student loans.[2]

18.    Beginning in 2010 and continuing until the present, the total amount of outstanding student loan debt has surpassed credit card and auto loan debt.[3]

19.    As of March 2020, there was over $1.6 trillion in outstanding student loan debt in the U.S.[4]

20.    There are two types of student loans: federal and private. The Department of Education issues or guarantees federal student loans based on the borrower's financial need. Banks, credit unions, and other entities issue private student loans based on the borrower's creditworthiness.[5]

---

[2] Board of Governors of the Federal Reserve System, *Report on the Economic Well-Being of U.S. Households in 2019*, at 43-44 (May 2020), *available at* https://www.federalreserve.gov/publications/files/2019-report-economic-well-being-us-households-202005.pdf (noting some students also use credit cards, home equity loans, and other types of personal loans to finance postsecondary education).

[3] Board of Governors of the Federal Reserve System, *Financial Stability Report*, at 39 (May 2020), *available at* https://www.federalreserve.gov/publications/files/financial-stability-report-20200515.pdf (includes all federal, state, and private loans to finance educational expenses).

[4] Board of Governors of the Federal Reserve System, *The Fed - Consumer Credit - G.19*, *available at* https://www.federalreserve.gov/releases/g19/current/default.htm (last visited July 24, 2020).

[5] Federal Trade Commission, "Student Loans", https://www.consumer.ftc.gov/articles/1028-student-loans; U.S. Department of Education, Federal Student Aid, "Federal Versus Private Loans", https://studentaid.gov/understand-aid/types/loans/federal-vs-private.

21.     Private student loans comprise about 8% of the total amount of outstanding student loan debt.[6]

22.     The majority of student loan debt comes from federal student loans issued under Title IV of the Higher Education Act,[7] primarily through the William D. Ford Federal Direct Loan Program (which lends funds directly to students) or the Federal Family Education Loan Program (which insures private lenders against borrower default).[8]

23.     In October 2017, the Department of Education released the first-ever set of long-range data on student loan repayment, which tracked loans that entered repayment in 1996 and 2004, respectively, for up to 20 years.[9] Analyzing that data, the Brookings Institute predicted that, for loans that entered repayment in 2004, nearly 40% of borrowers were likely to default by 2023, 20 years after the year their loans first entered repayment.[10]

---

[6] Government Accountability Office, *Private Student Loans: Clarification from CFPB Could Help Ensure More Consistent Opportunities and Treatment for Borrowers*, at 4-5 (May 2019), *available at* https://www.gao.gov/assets/700/699338.pdf; *see also* U.S. Department of Education, National Center for Education Statistics, Table 331.95, https://nces.ed.gov/programs/digest/d18/tables/dt18_331.95.asp (showing fluctuation in ratio of federal versus private loan utilization since 1999).

[7] 20 U.S.C. § 1070 *et seq.*

[8] U.S. Department of Education, *Federal Student Aid: Annual Report FY 2019*, at 12, *available at* https://studentaid.gov/data-center/business-info/strategic-planning-and-reporting. The Student Aid and Fiscal Responsibility Act ended originations of new FFEL loans in 2010. Pub. L. 111-152 (rider to Health Care and Education Reconciliation Act of 2010).

[9] U.S. Department of Education, National Center for Education Statistics, *Repayment of Student Loans as of 2015 Among 1995-96 and 2003-04 First-Time Beginning Students* (October 2017), *available at* https://nces.ed.gov/pubs2018/2018410.pdf.

[10] Judith Scott-Clayton, *The looming student loan default crisis is worse than we thought*, Brookings Institute, Evidence Speaks Reports, Vol. 2, No. 34 (Jan. 10, 2018), https://www.brookings.edu/wp-content/uploads/2018/01/scott-clayton-report.pdf.

24.     Borrowers younger than age 49 hold the majority of outstanding federal student loan debt. However, since 2005, the number of Americans above age 50 with federal student loan debt has steadily increased at a far higher rate compared with younger borrowers. Older borrowers are also disproportionately likely to default and become subject to administrative offsets.[11]

25.     Compared to borrowers without disabilities, borrowers with disabilities are more likely to be in default on their student loans within four years of earning a Bachelor's degree, with 2.9% and 4.3% four-year default rates, respectively.[12]

26.     Default rates are also higher for borrowers of color than for white borrowers. Four years after graduating with a Bachelor's degree, 7.6% of Black borrowers, 5.7% of Hispanic borrowers, and 2.4% of non-Hispanic white borrowers have defaulted on their loans.[13]

27.     Default rates are higher for women than for men. Among borrowers who complete a Bachelor's degree and do not go on to graduate school, women (3.5%) are more likely than men (2.4%) to default their student loans after earning a Bachelor's degree and not enrolling in any other degrees programs.[14]

---

[11] U.S. Government Accountability Office, *Social Security Offsets: Improvements to Program Design Could Better Assist Older Student Loan Borrowers with Obtaining Permitted Relief,* at 8-10 (Dec. 2016) (hereinafter "2016 GAO Report").

[12] American Association of University Women, Deeper in Debt: Women and Student Loans, p.31-33 (May 22, 2020) (hereinafter "Deeper in Debt") (analysis of data from U.S. Department of Education, National Center for Education Statistics, "Baccalaureate and Beyond Longitudinal Study 2008/12").

[13] Judith Scott-Clayton, & Jing Li, *Black-white disparity in student loan debt more than triples after graduation*, Economic Studies at Brookings, Vol. 2, No. 3, at 3 (October 20, 2016).

[14] Deeper in Debt, *supra* n.12, at 31-32.

2.      **Oregonians' Educational Debt Tracks the National Numbers**

28.      As of March 31, 2020, Oregonians owed $19.4 billion in federal student loan debt.[15]

29.      Of borrowers whose loans entered repayment in 2016, 11.5% were in default by 2019, the fourteenth highest rate of the fifty states.[16]

B.      **Social Security Retirement and Disability Are Vital Anti-Poverty Programs**

1.      **Social Security is a Critical Part of the National Safety Net**

30.      The Old-Age, Survivors, and Disability Insurance ("OASDI") program provides monthly benefits designed to replace the loss of income due to retirement, disability, or death.

31.      OASDI Old-Age Insurance Benefits, also known as Social Security Retirement benefits, are available to individuals who reach retirement age and have a sufficient work history.[17]

32.      OASDI Disability Benefits, also known as SSDI benefits, are available to individuals who are unable to earn a minimum income due to a disability.[18]

33.      Social Security Retirement and SSDI are "earned" benefits, which means that the amount a person generally receives depends on how much the person has paid into the Social

---

[15] U.S. Department of Education, Federal Student Aid, *available at* https://studentaid.gov/data-center/student/portfolio (Portfolio by Location spreadsheet).

[16] U.S. Department of Education, "FY 2016 Official Cohort Default Rates by State/Territory" (calculated August 4, 2019), https://www2.ed.gov/offices/OSFAP/defaultmanagement/staterates.pdf.

[17] 42 U.S.C. § 402(a).

[18] 42 U.S.C. § 423(a).

Security trust funds. Through payroll taxes, most workers in the U.S. pay a percentage of their wages into these funds.[19]

34.    Under certain circumstances, Social Security Retirement and SSDI are paid to individuals other than the contributing worker, for example, to spouses, children, and surviving relatives.[20] In such cases, the amount the spouse, child, or surviving relative receives is based on the amount the contributing worker paid into the trust funds.

35.    According to the U.S. Census Bureau, Social Security is the nation's most important anti-poverty program. Social Security lifted 27.2 million Americans out of poverty in 2018.[21]

36.    Social Security benefits are the primary source of income for many older Americans. Almost nine out of ten individuals age 65 and older receive Social Security benefits.[22] Among elderly Social Security beneficiaries, 21% of unmarried couples and 45% of unmarried individuals receive at least 90% of their income from Social Security, while 50% of married couples and 70% of unmarried individuals receive at least half their income from Social Security.

---

[19] *See* Social Security Administration, "Old-Age & Survivors Insurance Trust Fund", https://www.ssa.gov/OACT/ProgData/describeoasi.html; Social Security Administration, "Disability Insurance Trust Fund", https://www.ssa.gov/OACT/ProgData/describedi.html.

[20] 42 U.S.C. § 402(b)-(d).

[21] U.S. Census Bureau, "The Supplemental Poverty Measure: 2018", https://www.census.gov/library/publications/2019/demo/p60-268.html.

[22] Social Security Administration, *Fact Sheet*, *available at* https://www.ssa.gov/news/press/factsheets/basicfact-alt.pdf.

37.    SSDI dramatically cuts the poverty rate of non-senior workers with disabilities. Without SSDI, the poverty rate for this group would reach nearly 50%; with SSDI, it drops to 20%.[23]

38.    Social Security Retirement and SSDI have their strongest anti-poverty effects for women and people of color. In 2014:

a.    55% of women aged 65 of older, compared to 48% of men the same age, lived in families receiving at least half their income from Social Security Retirement or SSDI;[24]

b.    32.5% of non-Hispanic Black Americans against 65 and older, compared to 24.1% of non-Hispanic White Americans the same age, received at least 90% of their income from Social Security Retirement or SSDI;[25] and

c.    31.2% of Hispanic Americans age 65 and older, compared to 24.1% of non-Hispanic White Americans the same age, received at least 90% of their income from Social Security Retirement or SSDI.[26]

///

///

---

[23] Social Security Administration, "Characteristics of Noninstitutionalized DI and SSI Program Participants, 2010 Update" (Feb. 2014), *available at* https://www.ssa.gov/policy/docs/rsnotes/rsn2014-02.html.

[24] Social Security Administration, "The Importance of Social Security Benefits to the Income of the Aged Population", Social Security Bulletin, Vol. 77, No. 2, at 7-8 (2017), *available at* https://www.ssa.gov/policy/docs/ssb/v77n2/v77n2p1.html.

[25] *Id.*

[26] *Id.*

2.    **Social Security Lifts Hundreds of Thousands of Oregonians Out of Poverty**

39.    Oregon tracks the national numbers described above. 871,988 Oregonians received Social Security benefits in 2018.[27]

40.    In 2014, an estimated three in ten Oregonians 65 or older relied on Social Security as their only source of income.[28]

41.    Between 2016 and 2018, nearly 200,000 older Oregonians were lifted out of poverty by Social Security. Without Social Security, a third of Oregonians age 65 and older would live in poverty; with Social Security, the percentage drops to 6.9%.[29]

C.    **The Treasury Offset Program, Student Loan Debt and Social Security Benefits**

1.    **Overview of Options for Relief from Student Loan Debt**

42.    Most federal student loans have conditions designed to help borrowers who are struggling with repayment.

43.    For example, borrowers with a "total and permanent disability" ("TPD") that prevents them from working may apply to discharge the most common types of federal student loans.[30]

---

[27] Social Security Administration, Publication No. 13-11700, *Annual Statistical Supplemental to the Social Security Bulletin*, at 5.87, Table 5.J2 (2019), *available at* https://www.ssa.gov/policy/docs/statcomps/supplement/2019/supplement19.pdf.

[28] American Association of Retired People, Social Security: 2014 Oregon Quick Facts, https://www.aarp.org/content/dam/aarp/research/surveys_statistics/general/2014/ssqf/Social-Security-2014-Oregon-Quick-Facts-AARP-res-gen.pdf)

[29] Kathleen Romig, Center on Budget and Policy Priorities, *Social Security Lifts More Americans Above Poverty Than Any Other Program* (updated Feb. 20, 2020), *available at* https://www.cbpp.org/sites/default/files/atoms/files/10-25-13ss.pdf

[30] 20 U.S.C. § 1087; 34 C.F.R. § 685.213 (Direct Loan); 34 C.F.R. § 682.402 (FFEL).

CLASS ACTION ALLEGATION COMPLAINT – 11

44.    TPD discharge has existed since passage of the Higher Education Act of 1965. However, many eligible borrowers are unaware of TPD discharge, and only a fraction manage to successfully complete the application and monitoring process to have their loans forgiven.[31]

45.    A borrower may "rehabilitate" most types of federal student loans to cure a default.[32] Rehabilitation reduces monthly payments to a "reasonable and affordable" amount based on the borrower's financial situation, and can be as low as $5 per month. In order to complete rehabilitation, the borrower must make a certain number of on-time monthly payments.

46.    Effective August 14, 2008, a federal student loan may be rehabilitated only once.[33]

47.    For most federal student loans, borrowers who are not in default can qualify for a variety of income-driven repayment plans, including Income Contingent Repayment ("ICR"),[34] Income-Based Repayment ("IBR"),[35] Pay As You Earn ("PAYE"),[36] and Revised Pay As You Earn ("REPAYE").[37]  The primary differences between these plans are which types of federal

---

[31] 2016 GAO Report, *supra* n.11, at 26-38; *see also* 84 Fed. Reg. 44677 (Aug. 21, 2019), "Discharging the Federal Student Loan Debt of Totally and Permanently Disabled Veterans" (ordering Department of Education to facilitate TPD discharge for eligible veterans because "[t]he process has been overly complicated and difficult").

[32] 20 U.S.C. § 1078-6; 34 C.F.R. § 685.211(f) (Direct Loan); 34 C.F.R. § 682.405 (FFEL).

[33] 34 C.F.R. § 685.211(f)(12) (Direct Loan); 34 C.F.R. § 682.405(a)(4) (FFEL).

[34] ICR is available for Direct Loans only. 20 U.S.C. § 1087e(d)(1)(D), (e); 34 C.F.R. § 685.209(b).

[35] 20 U.S.C. § 1098e; 20 U.S.C. § 1087e(d)(1)(E) (Direct Loan); 20 U.S.C. § 1078(b)(9)(A)(v) (FFEL); 34 C.F.R. § 685.221 (Direct Loan); 34 C.F.R. § 682.215 (FFEL).

[36] 20 U.S.C. § 1087e(d)(1)(D), (e); 34 C.F.R. § 685.209(a).

[37] 20 U.S.C. § 1087e(d)(1)(D), (e); 34 C.F.R. 685.209(c).

student loans are eligible, and how minimum monthly payments are calculated.

48.      Eligibility for income-driven repayment depends on the type of loan, the date of loan disbursement, and the borrower's financial circumstances.[38]

49.      In general, an income-driven repayment plan requires a borrower to make affordable payments (based on borrower's income, as low as $0 per month) for a certain number of years (usually 20 to 25), and then forgives any debt that remains outstanding.[39]

50.      During income-driven repayment, the borrower continues to owe the debt, and interest continues to accrue. Each year, the borrower must provide updated financial information to recertify their eligibility for income-driven repayment. At the end of an income-driven repayment plan, any debt that is forgiven is treated as income for tax purposes.[40]

### 2.      Overview of the Offset Process

51.      As noted above, the Treasury Offset Program ("TOP") has conducted administrative offsets of Social Security benefits to recover federal student loan debt since 2001.

52.      The Department of Education generally can use TOP to collect any delinquent federal student loan debt, even debt that is many decades old.[41]

---

[38] *See* U.S. Department of Education, Federal Student Aid, "Repayment Plans", https://studentaid.gov/manage-loans/repayment/plans.

[39] *Id.*

[40] *Id.*

[41] *See* 31 U.S.C. § 3716(e); 20 U.S.C. § 1091a(a). The Higher Education Technical Amendments of 1991 eliminated all statutes of limitations for collection of most federal student loans. Pub. L. 102-26, 105 Stat. 123 (1991).  The Food, Conservation and Energy Act of 2008 eliminated all statutes of limitations for administrative offsets. Pub. L. 110-234, 122 Stat. 1482 (2008).

53.     The Department of Education does not have to obtain a court judgment or writ of garnishment before it commences an administrative offset through TOP.[42]

54.     Generally, administrative offsets are mandatory. The Department of Education must notify the Department of Treasury about any "legally enforceable nontax debt that is over 120 days delinquent . . . for purposes of administrative offset".[43]

55.     The Department of Education starts the offset process by sending a notice to the borrower ("the Education notice") that it intends to collect the debt through offset, including possible offset of Social Security benefits.[44]

56.     Many borrowers never receive the Education notice because the Department of Education frequently sends it to old, outdated addresses.

57.     The Education notice does not mention that borrowers with disabilities may be entitled to discharge of their loans.

58.     Although the Education notice mentions "rehabilitation", "consolidation", and "mutually agreeable payment" programs, it does not define those terms. The Education notice does not state anywhere that borrower's financial circumstances will be taken into account with respect to monthly payment amounts or that the borrower may be entitled to pay as little as $5

---

[42] See 31 U.S.C. § 3716(a) (noting a federal agency only needs to attempt to collect a debt pursuant to 31 U.S.C. § 3711(a) before pursuing administrative offset); see also Treasury, Bureau of the Fiscal Service, Treatise on Federal Nontax Debt Collection Law, Part III:53 (April 2018), available at https://www.fiscal.treasury.gov/files/dms/debt-treatise-partIII.pdf (noting it is not clear "what constitutes a sufficient attempt to collect, but sending a demand letter probably suffices").

[43] 31 U.S.C. § 3716(c)(6)(A); see also 31 C.F.R. § 285.4(d) (allowing submission of debts delinquent for fewer than 120 days if otherwise eligible for administrative offset).

[44] 31 U.S.C. § 3716(a)(1); see also 31 C.F.R. § 285.5(d)(6)(ii)(A) (noting the Education notice must be sent at least 60 days before submission of debt to Treasury for purposes of administrative offset).

per month (for rehabilitation) or $0 per month (for income-driven repayment).

59.     The Department of Education has a process for granting financial hardship

exemptions or reductions to individuals whose Social Security benefits are offset to repay their

federal student loan debt.[45] Financial hardship exemptions and reductions are wholly

discretionary.

60.     The Education notice contains no information about the financial hardship

application process.[46]

61.     The Education notice directs the borrower to call the Department of Education to

avoid offset. But many borrowers reasonably conclude such a call would be futile. The

Department of Education contracts with loan servicers who engage in aggressive collection

tactics such as calling borrowers' cell phones multiple times per day.[47] These servicers often

pressure borrowers to make payments without mentioning their potential eligibility for

affordable, income-driven repayment options. After months or years of such collection activity,

may borrowers do not understand that the loan servicer is separate from the Department and

believe that calling to ask about repayment options would subject them to more of the same

pressure to make payments they cannot afford.

62.     No fewer than 60 days after it sends the Education notice, the Department of

---

[45] *See* 31 C.F.R. § 285.5(d)(12).

[46] 2016 GAO Report, *supra* n.11, at 41-42 (noting Department of Education only provides information about hardship exemptions if requested by the borrower).

[47] Ann Carrns, *Consumer Groups Take Aim at Navient for Phone Harassment*, N.Y. Times (June 16, 2017), https://www.nytimes.com/2017/06/16/your-money/consumer-groups-accuse-navient-phone-harassment.html.

Education provides information about delinquent debt to Treasury.[48] Treasury then attempts to match the debt with money that federal agencies are paying to the debtor, such as a Social Security payment.[49]

63.   When a match is found, Treasury sends a notice to the borrower ("the Treasury notice") that his or her Social Security payment will be offset to repay federal student loan debt to the Department of Education.[50]

64.   Many borrowers never receive the Treasury notice because Treasury frequently sends it to old, outdated addresses.

65.   The Treasury notice says that a borrower may prevent the offset by contacting the Department of Education and "meet[ing] its requirements." It does not mention rehabilitation, income-driven repayment options, or financial hardship exemptions. The Treasury notice does not indicate in any way that there are programs that takes financial circumstances into account or specify that borrowers may be entitled to pay as little as $5 or $0 per month.

66.   After sending the Treasury notice, Treasury intercepts (offsets) a portion of the borrower's next Social Security payment. After Treasury takes a fee ($12.50 per monthly offset in 2020), it gives the balance of the offset to the Department of Education, which applies it to the borrower's debt.[51]

67.   The DCIA protects the first $9,000 per year ($750 per month) of Social Security

---

[48] 31 C.F.R. § 285.5(d)(5)-(6).

[49] 31 C.F.R. § 285.4(c).

[50] 31 U.S.C. § 3716(c)(7); 31 C.F.R. § 285.4(f).

[51] 31 U.S.C. § 3716(c)(4); 31 C.F.R. § 285.4(g).

benefits from offset.[52] The offset amount is the difference between the person's benefit and $750 or 15% of the total benefit amount, whichever is less. The chart below shows how this calculation works for individuals receiving different amounts of Social Security benefits.

| Monthly Social Security Benefit | Excess of Monthly Benefit over $750 | 15% of Monthly Benefit | Maximum Offset Amount |
|---|---|---|---|
| $1,000 | $250 | $150 | $150 |
| $850 | $100 | $127.50 | $100 |

68.    Treasury continues to offset the maximum allowable amount from the borrower's Social Security benefit each month. Each year, when Social Security benefits increase, the offset automatically increases as well.

69.    Each month that it offsets a Social Security benefit, Treasury sends a notice to the borrower titled "What Happened to My Payment?" The notice states, "If you agree that you owe the debt, you do not need to do anything." It directs borrowers interested in "resolv[ing]" the debt to contact the Department of Education. The notice does not mention rehabilitation, income-driven repayment options, or financial hardship exemptions, not does it indicate in any way that there are programs that takes financial circumstances into account or specify that borrowers may be entitled to pay as little as $5 or $0 per month.

70.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act provided temporary relief to federal student loan borrowers. The CARES Act paused all collection activity on delinquent federal student loans, including offset of Social Security benefits, from mid-March

---

[52] 31 U.S.C. § 3716(c)(3)(A)(ii).

2020 through September 30, 2020.[53]

71.    On August 8, 2020, President Trump issued a memorandum to Secretary DeVos, directing the Department of Education to "continue the temporary cessation of payments and the waiver of all interest on student loans held by the Department of Education until December 31, 2020."[54]

72.    Absent new action by Congress or the President, offset of Social Security benefits to repay federal educational debt will resume January 1, 2021.[55]

**3.    Offset of Benefits to Repay Educational Debt Deepens Poverty**

**a.    Nationally, Offsets to Repay Student Loans Push Increasing Numbers of Social Security Recipients into Poverty**

73.    In 2002, 36,000 Americans had their Social Security benefits reduced to repay federal student loan debt.[56]

74.    In 2004, fewer than 10,000 people nationally had their Social Security benefit reduced below (or pushed further below) the poverty line by administrative offset to collect student loan debt.[57]

75.    By 2015, the number of Americans whose Social Security benefits were offset to

---

[53] Pub. L. 116-136, Sec. 3513(e)(3).

[54] Presidential Memorandum on Continued Student Loan Payment Relief During the COVID-19 Pandemic (Aug. 8, 2020), *available at* https://www.whitehouse.gov/presidential-actions/memorandum-continued-student-loan-payment-relief-covid-19-pandemic//.

[55] Pub. L. 116-136, Sec. 3513(a) (suspends payments due for student loans through September 30, 2020), Sec. 3513(e) (suspends involuntary collection, including offsets, for same period as stated in subsection 3513(a)).

[56] 2016 GAO Report, *supra* n.11, at 11.

[57] *Id.* at 27.

repay educational debt had grown to more than 173,000 people.[58]— a nearly 500% increase since Social Security benefits became subject to offset.

76.     By 2015, nearly 70,000 people nationally had their Social Security benefits reduced below (or pushed further below) the poverty line by administrative offset to collect student loan debt—a sevenfold increase in just over a decade.[59] This means that about 40% of people whose Social Security was reduced to repay educational debt in 2015 had their benefits reduced below the poverty line.

77.     The DCIA set the "floor" for Social Security benefits protected from offset at $750 per month. In 1996, the federal poverty level for a household of one in the contiguous 48 states was $645 per month.[60] For a household of one, $750 per month was, in 1996, 116% of the federal poverty level.

78.     Since 1996, Congress has not raised the amount of Social Security benefits protected from offset.

79.     In 2020, the federal poverty level for a household of one is $1,063 per month.[61] A person with $750 per month in income falls at about 70% of the federal poverty level.

80.     If $750 had been indexed to increase at the same rate as the poverty threshold, in

---

[58] *Id.* at 11.

[59] *Id.* at 27.

[60] U.S. Department of Health and Human Services, "Annual Update of the HHS Poverty Guidelines" (Mar. 4, 1996), https://aspe.hhs.gov/1996-poverty-guidelines-federal-register-notice.

[61] U.S. Department of Health and Human Services, "Poverty Guidelines" (January 8, 2020), https://aspe.hhs.gov/poverty-guidelines.

2020 the protected benefit amount would be $1,236.[62]

81.    As alleged above, the Department of Education has a program for requesting a financial hardship exemption or reduction, but it does not provide information about that program in any of its notices or on its website. In order to apply, the borrower must know about the program and request an application.[63]

82.    Despite the fact that a large share of Social Security recipients live in or near poverty, less than 10% of all borrowers subject to offset obtained a financial hardship exemption or reduction in 2015.[64]

83.    Nationally, a third of borrowers age 50 and older in the remain in default five years after becoming subject to offset.[65]

84.    Nearly half of borrowers who are 50 or older at the time they become subject to offset owe debt on loans that are at least 20 years old.

85.    Social Security offsets represent a small share of the Department of Education's collections. Nearly 75% of the offsets are applied to Treasury Offset Program fees and interest. Many borrowers' offsets go *entirely* to interest and fees, and their loan balances increase while they are subject to offset.[66]

---

[62] Plaintiffs reached this number using the Bureau of Labor Statistics' Consumer Price Index inflation calculator, which is available online at https://www.bls.gov/data/inflation_calculator.htm.

[63] 2016 GAO Report, *supra* n.11, at 41.

[64] *Id.* at 40-41.

[65] *Id.* at 17.

[66] *Id.*

b.      **In Oregon, Offset of Social Security Benefits to Repay Student Loan Debt Exacerbates Poverty**

86.     According to information provided by the Treasury Department in response to a Freedom of Information Request, in 2019, 4,893 Oregonians had their Social Security benefits offset to repay federal student loan debt. Those offsets reduced Oregonian's Social Security benefits by $5,024,150.98 that year.

87.     If the DCIA's protected-income threshold of $750 had been indexed to inflation, a majority of Oregonians subject to offset in 2019 would not have had their benefits reduced because their monthly benefit amount is lower than $1,236.

88.     In 2019, the poverty rate in Oregon was 12.6%.[67]

89.     According to documents provided by the Treasury Department in response to a Freedom of Information Request, despite this poverty rate, in 2019, fewer than 4% of Oregonians whose Social Security benefits were offset to repay federal student loan debt obtained a financial hardship exemption or reduction from the Department of Education.

90.     Offset of Social Security benefits to collect federal student loan debt is pushing thousands of senior Oregonians and Oregonians with disabilities into (or deeper into) poverty.

D.      **The Named Plaintiffs**

1.      **Plaintiff Jennifer Booth**

91.     Plaintiff Jennifer Booth is a 70-year-old grandmother. She has custody of her 12-year-old grandson and has raised him since he was a baby.

92.     Ms. Booth's sole sources of income are Social Security retirement and $200 per

---

[67] U.S. Census Bureau, https://www.census.gov/quickfacts/OR.

month in cash assistance from the Temporary Assistance for Needy Families program. Since 2019, her Social Security retirement check has been reduced to repay her federal student loans. In March 2020, Ms. Booth's income of $951.40 per month placed her household at 66% of the federal poverty level.

93.    In 2007, Ms. Booth—who had previously worked as an administrative assistant in the U.S. Air Force—decided to go back to school to become a teacher. She took out a total of $10,750 in federal loans so she could pursue an undergraduate teaching degree at California State University Fullerton.

94.    Ms. Booth, who was 57 when she enrolled in school, had great difficulty completing the coursework, which was all online, due to her age and limited experience with computers. She stopped pursuing a degree after one year.

95.    Ms. Booth's loan debt accrues 6.8% interest per year. The amount she owes has nearly tripled, to $27,924. Ms. Booth also owes $4,203.54 on a parent PLUS loan that she took out in 2000 so that her daughter could attend Santa Barbara Business College. In all, she owes more than $32,000 on her loans, which are now held by the Department of Education and serviced by Educational Credit Management Corporation ("ECMC").

96.    In 2015, Ms. Booth successfully "rehabilitated" her loans by paying $5 per month for nine months. At that point, she should have qualified for a $0 per month income-based or income-driven repayment plan.

97.    No one at ECMC explained to her how to transition from rehabilitation to a low-dollar income-based plan. Ms. Booth's loans instead were set on a regular repayment schedule, at a level Ms. Booth could not afford. The loans returned to default status.

98.     If someone had offered Ms. Booth the opportunity to avoid default by continuing to pay $5 per month (or by paying $0 per month), she would have taken it.

99.     Ms. Booth received written notices from Treasury in January and February 2019 that her Social Security benefit would be reduced by up to 15% because of her debt to the Department of Education. If those notices had informed her that she could avoid offset and qualify for a $0 per month payment plan, she would have followed up to enroll in such a program.

100.    Defendants first offset Ms. Booth's Social Security retirement check to repay her federal educational debt in June 2019. At that time, her Social Security benefit amount was $794, and defendants offset the statutory maximum of $44.

101.    Later in 2019, Ms. Booth's benefit amount increased to $859 and then to $870. The offset amount increased to $109 and then to $120, meaning that she consistently received only $750 per month.

102.    In January 2020, Ms. Booth's Social Security benefit increased to $884, just above the threshold where the statutory formula permits offset down to $750. In the first few months of 2020, Ms. Booth's was offset $132.60 (15% of $884), and she received $751.40 per month.

103.    Prior to April 2020, staff from ECMC called Ms. Booth multiple times per day, including early in the morning and late in the evening, to pressure her to pay more toward her student loan debt. She has received as many as six calls in a single day. In these calls, ECMC did not explain to Ms. Booth that could qualify for a $0 per month repayment plan based on her income. Instead, ECMC staff made accusatory statements, such as, "I don't know why you went

to school at all if you weren't going to pay it back."

104.     ECMC stopped calling in April 2020, after Congress passed the CARES Act and temporarily suspended all collection activity on federally held student loans.

105.     With such limited income, it is a daily struggle for Ms. Booth to keep herself and her grandson housed, clothed, and fed. Because of the CARES Act relief, she now receives the full amount of her Social Security Retirement check each month: $884. The additional $132.60 per month has made a big difference and has helped her keep the household safe and stable.

### 2.     Plaintiff David Becker

106.     Plaintiff David Becker is a 59-year-old single man and a veteran of the U.S. National Guard.

107.     Mr. Becker began receiving SSDI in April 2018, on the basis of colon cancer and bladder cancer. He has undergone multiple surgeries, including a colostomy, to treat these disabling conditions.

108.     SSDI is Mr. Becker's sole source of income. His SSDI check has been reduced to $750 to repay his federal student loans the entire time he has received SSDI. This income of $750 per month places Mr. Becker at 70.53% of the poverty level.

109.     In 1988, Mr. Becker took out a $2,625 loan to attend the Columbia College of Business. He planned to pursue a degree in accounting, but did not complete the program.

110.     Mr. Becker's loan debt accrues 8% interest per year. As of June 5, 2020, Mr. Becker owes a total of $10,330.73 on this loan: $3,469.51 in unpaid principal (which increased due to capitalized interest when the guaranty agency paid an insurance claim to the lender) and $6,861.22 in accrued interest.

111.    The Department of Education reports that it sent Mr. Becker notice he could be subject to offset in July 2012. Mr. Becker, who was not receiving Social Security benefits in 2012, does not recall if he received this notice.

112.    In September 2012, the Department of Education referred Mr. Becker's debt to Treasury for offset.

113.    Mr. Becker qualified for $851 per month in SSDI in April 2018. His monthly benefit was offset by $101 per month to the $750 per month level.

114.    In 2019, Mr. Becker's benefit increased to $877 per month. The monthly offset increased to $127 per month, and he continued to receive $750 per month.

115.    In 2020, Mr. Becker's benefit increased to $891 per month in 2020, the offset increased to $133.65 per month (15% of the benefit amount), and he began receiving $757.35 per month.

116.    Between April 2018 and March 2020, a total of $2,310.30 of Mr. Becker's SSDI benefits were offset to repay his student loan debt. Of that amount, $259.30 was applied to Treasury fees and $2,051.00 was applied to interest. These offsets have not reduced the principle of Mr. Becker's loans.

117.    Mr. Becker has been low-income most of his adult life. He was homeless for many years. After qualifying for 2018, he was able to find stable housing with the assistance of a local housing nonprofit. Even with a generous housing subsidy, It is very difficult for Mr. Becker to makes end meet on $757 per month.

118.    Since April 2020, Mr. Becker's SSDI check has not been offset because of the CARES Act protections. With the additional $133.65 per month, it is much easier for him to pay

for rent, food, and medical costs.

### 3.    Plaintiff HELPS

119.    Plaintiff Help Eliminate Legal Problems for Seniors and Disabled ("HELPS") is a 501(c)(3) charitable organization and nonprofit law firm. HELPS represents low-income seniors and individuals with disabilities under the Fair Debt Collection Practices Act by stopping debt collector harassment by phone or mail, educates seniors and people with disabilities about their rights, and provides referrals to full-scope legal representation as needed.

120.    HELPS is a national organization that assists clients throughout the country. HELPS was founded in Oregon, is based in Salem, and regularly provides representation to Oregonians.

121.    HELPS frequently hears from clients because a creditor is taking action to attempt to collect educational debt. In February 2020, HELPS had 253 active cases involving student loans. Nearly a third of these clients reside in Oregon.

122.    When a client has a private student loan, HELPS protects them by informing the creditor that Social Security income is federally protected from creditors.

123.    Unlike with clients who owe educational debt to private lenders, HELPS cannot stop collection of federal student loan debt by informing the creditor that Social Security benefits are protected. Instead, HELPS guides individuals with qualifying disabilities through the discharge process, and helps clients ineligible for discharge to rehabilitate their loans and enroll in income-based repayment plans. These are time-consuming steps that prevent HELPS from assisting other clients and diminish the program's limited resources. HELPS would not have to engage in these efforts if Social Security benefits were not subject to offset.

## V.  CLASS ACTION ALLEGATIONS

124.    This action is brought and may properly be maintained on behalf of Plaintiffs and a class consisting of all residents of Oregon who have had Social Security benefits offset by Defendants to recover student loan debt.

125.    This proposed class satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

### A.    Numerosity – Fed. R. Civ. P. 23(a)(1)

126.    The class in this suit is so numerous that joinder of all of its members is impracticable.

127.    In 2019, 4,893 Oregonians had their Social Security benefits offset to repay federal student loan debt.

### B.    Commonality – Fed. R. Civ. P. 23(a)(2)

128.    The relief sought is common to all class members, and common questions of law and fact exist as to all class members.

129.    The questions of law and fact common to the class predominate over any questions affecting solely individual members of the action, and include:

a.    Whether offset of Social Security benefits to repay federal student loan debt violates class members' right to equal protection of the laws;

b.    Whether the process for offsetting Social Security benefits to repay federal student loan debt violates class members' right to due process; and

c.    Whether the offset of class members' Social Security benefits is unlawful agency action under the Administrative Procedure Act.

C.    **Typicality – Fed. R. Civ. P. 23(a)(3)**

130.    Plaintiffs' claims are typical of the class.

131.    A ruling in plaintiffs' favor on the equal protection and APA claims would benefit every class member. Such a ruling would stop the offset of class members' Social Security benefits and entitle them to restitution.

132.    A ruling in plaintiffs' favor on the due process claims would also benefit every class member. Such a ruling would give class members the right to receive information about options that would allow them to reduce or avoid the offset of their Social Security benefits.

D.    **Adequacy – Fed. R. Civ. P. 23(a)(4)**

133.    Plaintiffs will fairly and adequately protect the interests of the class.  There are no known conflicts among class members, all of whom have a similar interest in asserting their constitutional rights.

134.    Plaintiffs are represented by counsel with experience in pursuing class action litigation, particularly in the areas of benefits and constitutional challenges to federal and state statutes or regulations, and who will properly fulfill their duties as class counsel.

E.    **Rule 23(b)**

135.    Plaintiffs' claims for injunctive and declaratory relief are appropriate for certification under Rule 23(b)(2) because defendants are offsetting class members' Social Security benefits on grounds that apply generally to the class and final injunctive and declaratory relief is appropriate respecting the class as a whole.

136.    Plaintiffs' claims for restitution of Social Security benefits unlawfully withheld are appropriate for certification under Rule 23(b)(3). Whether class members are entitled to

restitution depends on resolution of the classwide questions described in Section V.B, above. The fact that many class members have few resources and little information regarding their rights means that many of them are unable to prosecute lawsuits to protect their Social Security benefits. Having those questions resolved in a single consolidated action is the best way to fairly and efficiently adjudicate the controversy.

137.    Concentrating this litigation in one forum, as opposed to separate cases in various courts, will promote judicial economy, consistency and parity among the claims of individual class members. Allowing this lawsuit to proceed as a class action will permit the class of similarly situated persons to prosecute their common claims in a single forum simultaneously and efficiently.

138.    Plaintiffs are not aware of any difficulty that could be encountered in the management of this action that would preclude its maintenance as a class action.

## VI.    FIRST CLAIM FOR RELIEF

### Fifth Amendment to the U.S. Constitution (Equal Protection)

139.    Plaintiffs incorporate the allegations of paragraphs 1 to 138, above, as if fully set forth herein.

140.    Oregonians who owe educational debt to the federal government are similarly situated to Oregonians who owe educational debt to private lenders.

141.    A person who has private educational debt cannot have her Social Security benefits reduced to repay that debt. By contrast, a person who has federal educational debt is subject to offset of Social Security benefits. Whether a person who owes student loan debt will lose a portion of her Social Security benefits hinges solely on whether her debt is to a private or

public lender.

142.    The federal government has not merely given public debts precedence over private debts or used a different enforcement mechanism for collecting federal student loan debt; it has made an otherwise protected source of income subject to offset solely because the debt is to a public entity.

143.    This discrimination violates the Constitution's guarantee of equal protection of the laws under *James v. Strange*, 407 U.S. 128, 139 (1972).

144.    Plaintiffs and class members are entitled to a declaration that the offset of their Social Security benefits is illegal, an injunction preventing the offset of future Social Security benefits to repay student loan debt, and restitution of all amounts Defendants have wrongfully offset from Plaintiffs' and class members' Social Security benefits to repay student loan debt.

## VII.    SECOND CLAIM FOR RELIEF

### Fifth Amendment to the U.S. Constitution

### (Due Process – Failure to Provide Adequate Notice and Pre-Deprivation Hearing)

145.    Plaintiffs incorporate the allegations of paragraphs 1 to 144, above, as if fully set forth herein.

146.    Social Security benefits are property rights subject to constitutional due process protection.

147.    Federal law requires both the Department of Education and the Department of the Treasury to provide written notice to debtors prior to using the Treasury Offset Program to collect federal student loan debt. 31 U.S.C. § 3716(a), 3716(c)(7).

148.    Despite these requirements, debtors such as Plaintiffs and other members of the

class often receive no advance notice that their Social Security benefits will be reduced.

149.    Even when received, the notices are constitutionally inadequate because they do not inform the recipients that they may be able to avoid or reduce the amount or duration of the offset through one or more of the following programs:

      a.    Financial hardship exemption from offset or reduction of offset;

      b.    The opportunity to rehabilitate the loan, with monthly payment amounts as low as $5 per month; or

      c.    Income-driven repayment plans with $0 per month payment amounts for individuals living near or below the poverty line.

150.    Plaintiffs and class members are entitled to a declaration that the offset of their Social Security benefits is illegal, an injunction requiring the Defendants to notify Plaintiffs and class members that they may be able to avoid offset or reduce the duration of offset through affordable payment options, and restitution of all amounts Defendants have wrongfully offset from Plaintiffs' and class members' Social Security benefits to repay student loan debt.

## VIII.   THIRD CLAIM FOR RELIEF

### (Administrative Procedure Act – Unlawful Agency Action)

151.    Plaintiffs incorporate the allegations of paragraphs 1 to 150, above, as if fully set forth herein.

152.    Because offset of Social Security benefits to repay federal educational debt violates Plaintiffs' rights to equal protection and due process as set forth above, each offset is unlawful agency action that must be set aside under 5 U.S.C. § 706.

153.    Plaintiffs and class members are entitled to a declaration that the offset of their

Social Security benefits is illegal, an order setting the offset of their benefits aside, and restitution of all amounts Defendants have wrongfully offset from Plaintiffs' and class members' Social Security benefits to repay student loan debt.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all members of the proposed class, pray for:

(a)    An order designating this action as a class action and appointing Plaintiffs attorney as counsel for the class;

(b)    A declaration that Defendants' practices as alleged herein have violated and continue to violate equal protection and due process guarantees of the Fifth Amendment to the U.S. Constitution and § 706 of the Administrative Procedure Act as to the individual Plaintiffs and as to the class;

(c)    An order and judgment preliminarily and permanently ordering Defendants, their subordinates, agents, employees, representatives, and all others acting or purporting to act on their behalf, from offsetting Plaintiffs' and class members' Social Security benefits to repay federal student loan debt;

(d)    An order and judgment preliminarily and permanently ordering Defendants, their subordinates, agents, employees, representatives, and all others acting or purporting to act on their behalf, to notify Plaintiffs and class members prior to offset of their right to avoid offset or reduce the duration offset through affordable payment options;

(e)    Restitution of amounts improperly withheld from Plaintiffs and class members;

(f)    An award of reasonable attorney fees pursuant to 28 U.S.C. § 2412(d)(1)(A), and

costs and disbursements incurred herein; and

      (g)    Such other and further legal and equitable relief as this Court deems just and proper.


DATED this 24th day of August 2020.


OREGON LAW CENTER


**/s/ Kelsey Heilman**
Stephen Walters, OSB No. 801200
swalters@oregonlawcener.org
Edward Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
Beth Englander, OSB No. 980190
benglander@oregonlawcenter.org
Kelsey Heilman, OSB No.140348
kheilman@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave, Suite 812
Portland, OR  97204
(503) 473-8324

Gerald Lunn, OSB No. 153768
glunn@oregonlawcenter.org
OREGON LAW CENTER
230 NE 2nd Ave, Suite F
Hillsboro OR 97124
(503) 640-4115

Of Attorneys for Plaintiffs