Stephen Walters, OSB No. 801200
swalters@oregonlawcener.org
Edward Johnson, OSB No. 980190
ejohnson@oregonlawcenter.org
Beth Englander, OSB No. 980190
benglander@oregonlawcenter.org
Kelsey Heilman, OSB No.140348
kheilman@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave, Suite 812
Portland, OR  97204
(503) 473-8324

Gerald Lunn, OSB No. 153768
glunn@oregonlawcenter.org
OREGON LAW CENTER
230 NE 2nd Ave, Suite F
Hillsboro OR 97124
(503) 640-4115

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JENNIFER BOOTH, and DAVID BECKER, CLIFFORD THOMPSON, and EDWARD LEWIS, on behalf of themselves and all others similarly situated, and HELPS, <br><br> Plaintiffs, <br><br> v. <br><br> MIGUEL BETSY DEVOS MIGUEL CARDONA, in his her capacity as Secretary of the U.S. Department of Education, and ; STEVEN MNUCHIN JANET YELLEN, in her his capacity as Secretary of the U.S. Department of the Treasury, and ANDREW | Case No. 6:20-cv-01433-AA <br><br> FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT <br><br> **Civil Rights Action (Fifth Amendment to U.S. Constitution – Due Process and Equal Protection); Administrative Procedure Act (5 U.S.C. § 706)** |

~~SAUL, in his capacity as Commissioner of U.S. Social Security Administration,~~

                    Defendants.

Plaintiffs file this complaint against the Secretary of the U.S. Department of Education, the Secretary of the U.S. Department of the Treasury, and the Commissioner of the Social Security Administration. Plaintiffs allege as follows:

## I.    INTRODUCTION

1.    Plaintiffs Jennifer Booth~~, and~~ David Becker, Clifford Thompson, and Edward Lewis, on behalf of themselves and a class of all persons in Oregon who are similarly situated, and Plaintiff Help Eliminate Legal Problems for Senior and Disabled ("HELPS"), challenge defendants' unlawful reduction of Social Security benefits to repay federal student loan debt.

2.    Under the Debt Collection Act of 1982, a federal agency may collect an outstanding debt by "administrative offset", which means interception of a payment owed to the debtor by a different federal agency. Pub. L. 97-365. The Treasury Offset Program ("TOP") conducts such administrative offsets.

3.    Generally, Social Security benefits are exempt from attachment by most creditors. 42 U.S.C. § 407(a). However, The Debt Collection Improvement Act of 1996 subjected Social Security benefits to administrative offsets, including for purposes of recovering federal student loan debt owed to the Department of Education. Pub. L. 104-134.

4.    Since 2002, the first full year that TOP conducted administrative offsets of Social

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 2

Security benefits,[1] the number of Social Security beneficiaries subjected to administrative offset to repay federal student loan debt has increased more than 500%.

5.      In 2019, TOP offset the Social Security benefits of 4,893 Oregonians—Plaintiffs Jennifer Booth ~~and~~, David Becker, Clifford Thompson, and Edward Lewis (collectively, "Individual Plaintiffs") among them—to repay federal student loan debt. These offsets pushed Plaintiffs and thousands of similarly situated Oregonians into (or deeper into) poverty.

6.      Administrative offsets of Social Security benefits to repay federal student loan debt violate Plaintiffs' right to equal protection and due process under the Fifth Amendment to the U.S. Constitution, and are unlawful agency actions under Section 706 of the Administrative Procedure Act.

7.      ~~Plaintiffs June Booth and David Becker,~~ Individual Plaintiffs, on behalf of themselves and all other similarly situated Oregonians, and Plaintiff HELPS seek declaratory and injunctive relief against ~~Betsy DeVos,~~ Miguel Cardona, in ~~his~~her official capacity as Secretary of the U.S. Department of Education, and ~~; Steven Mnuchin~~ Janet Yellen, in ~~her~~his official capacity as Secretary of the U.S. Department of the Treasury~~; and Andrew Saul, in his official capacity as Commissioner of the Social Security Administration~~, to end administrative offsets of Oregonians' Social Security benefits to repay federal student loan debt.

8.      In addition, ~~Individual Plaintiffs June Booth and David Becke~~ Individual Plaintiffs~~r~~, on behalf of themselves and all other similarly situated Oregonians, seek restitution

---

[1] Government Accountability Office, "Older Americans: Inability to Repay Student Loans May Affect Financial Security of a Small Percentage of Retirees", at 17 n.26 (Sept. 2014), *available at* https://www.gao.gov/assets/670/665709.pdf.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 3

for amounts unlawfully intercepted from their Social Security benefits to repay federal student loan debt.

## II.    JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331, because Plaintiffs' claims arise under the Fifth Amendment to the U.S. Constitution and Section 706 of the Administrative Procedure Act.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to these claims occurred in the District.

## III.    PARTIES

11.    Plaintiff Jennifer June Booth is a resident of Bend, Oregon, who has had her Social Security benefits offset to repay federal student loan debt since July 2019.

12.    Plaintiff David Becker is a resident of Portland, Oregon, who has had his Social Security benefits offset to repay federal student loan debt since April 2018.

13.    Plaintiff Clifford Thompson is a resident of Grants Pass, Oregon, who has had his Social Security benefits offset to repay federal student loan debt since February 2018.

12.14.    Plaintiff Edward Lewis is a resident of Salem, Oregon, who has had his Social Security benefits offset to repay federal student loan debt since June 2019.

13.15.    Plaintiff Help Eliminate Legal Problems for Senior and Disabled ("HELPS") is a 501(c)(3) nonprofit organization headquartered in Salem, Oregon.

14.16.    Defendant Miguel Betsy DeVos Miguel Cardona is the Secretary for the U.S. Department of Education, the agency that administers the federal student financial aid program, 20 U.S.C. § 1071 *et seq*. Secretary  DeVos Cardona is sued in her his official capacity.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 4

15.17.  Defendant Steven Mnuchin Janet Yellen is the Secretary for the U.S. Department

of the Treasury, the agency that administers the Treasury Offset Program through the Bureau of

the Fiscal Service. Secretary  Mnuchin Yellen is sued in her his official capacity.

16.    Defendant Andrew Saul is the Commissioner for the Social Security

Administration, the agency that oversees Social Security retirement and Social Security

Disability Insurance benefits. Commissioner Saul is sued in his official capacity.

##

##

##

##

IV.    **FACTUAL ALLEGATIONS**

A.    **Student Loans Burden an Increasing Number of Oregonians**

1.    **Educational Debt Has Exploded Across the Country**

17.18.  As of late 2019, nearly one third of adults in the U.S. had incurred at least some

debt for their education, primarily in the form of student loans.[2]

18.19.  Beginning in 2010 and continuing until the present, the total amount of

outstanding student loan debt has surpassed credit card and auto loan debt.[3]

---

[2] Board of Governors of the Federal Reserve System, *Report on the Economic Well-Being of U.S. Households in 2019*, at 43-44 (May 2020), *available at* https://www.federalreserve.gov/publications/files/2019-report-economic-well-being-us-households-202005.pdf (noting some students also use credit cards, home equity loans, and other types of personal loans to finance postsecondary education).

[3] Board of Governors of the Federal Reserve System, *Financial Stability Report*, at 39 (May 2020), *available at* https://www.federalreserve.gov/publications/files/financial-stability-

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 5

~~19.~~20.  As of March 2020, there was over $1.6 trillion in outstanding student loan debt in

the U.S.[4]

~~20.~~21.  There are two types of student loans: federal and private. The Department of

Education issues or guarantees federal student loans based on the borrower's financial need.

Banks, credit unions, and other entities issue private student loans based on the borrower's

creditworthiness.[5]

~~21.~~22.  Private student loans comprise only about 8% of the total amount of outstanding

student loan debt.[6]

~~22.~~23.  The majority of student loan debt comes from federal student loans issued under

Title IV of the Higher Education Act (20 U.S.C. § 1070 et seq.), primarily through the William

D. Ford Federal Direct Loan Program (which lends funds directly to students) or the Federal

Family Education Loan Program (which insures private lenders against borrower default).[7]

---

report-20200515.pdf (includes all federal, state, and private loans to finance educational expenses).

[4] Board of Governors of the Federal Reserve System, *The Fed - Consumer Credit - G.19*, *available at* https://www.federalreserve.gov/releases/g19/current/default.htm (last visited July 24, 2020).

[5] Federal Trade Commission, "Student Loans", https://www.consumer.ftc.gov/articles/1028-student-loans; U.S. Department of Education, Federal Student Aid, "Federal Versus Private Loans", https://studentaid.gov/understand-aid/types/loans/federal-vs-private.

[6] Government Accountability Office, *Private Student Loans: Clarification from CFPB Could Help Ensure More Consistent Opportunities and Treatment for Borrowers*, at 4-5 (May 2019), *available at* https://www.gao.gov/assets/700/699338.pdf; *see also* U.S. Department of Education, National Center for Education Statistics, Table 331.95, https://nces.ed.gov/programs/digest/d18/tables/dt18_331.95.asp (showing fluctuation in ratio of federal versus private loan utilization since 1999).

[7] U.S. Department of Education, *Federal Student Aid: Annual Report FY 2019*, at 12, *available at* https://studentaid.gov/data-center/business-info/strategic-planning-and-reporting.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 6

23.24.  In October 2017, the Department of Education released the first-ever set of long-range data on student loan repayment, which tracked loans that entered repayment in 1996 and 2004, respectively, for up to 20 years.[8] Analyzing that data, the Brookings Institute predicted that, for loans that entered repayment in 2004, nearly 40% of borrowers were likely to default by 2023, 20 years after the year their loans first entered repayment.[9]

24.25.  Borrowers younger than age 49 hold the majority of outstanding federal student loan debt. However, since 2005, the number of Americans above age 50 with federal student loan debt has steadily increased at a far higher rate compared with younger borrowers. Older borrowers are disproportionately likely to default and become subject to administrative offsets.[10]

25.26.  Compared to borrowers without disabilities, borrowers with disabilities are more likely to be in default on their student loans within four years of earning a bachelor's degree, with 2.9% and 4.3% four-year default rates, respectively.[11]

---

The Student Aid and Fiscal Responsibility Act ended originations of new FFEL loans in 2010. Pub. L. 111-152 (rider to Health Care and Education Reconciliation Act of 2010).

[8] U.S. Department of Education, National Center for Education Statistics, *Repayment of Student Loans as of 2015 Among 1995-96 and 2003-04 First-Time Beginning Students* (October 2017), *available at* https://nces.ed.gov/pubs2018/2018410.pdf.

[9] Judith Scott-Clayton, *The looming student loan default crisis is worse than we thought*, Brookings Institute, Evidence Speaks Reports, Vol. 2, No. 34 (Jan. 10, 2018), https://www.brookings.edu/wp-content/uploads/2018/01/scott-clayton-report.pdf.

[10] U.S. Government Accountability Office, *Social Security Offsets: Improvements to Program Design Could Better Assist Older Student Loan Borrowers with Obtaining Permitted Relief,* at 8-10 (Dec. 2016) (hereinafter "2016 GAO Report").

[11] American Association of University Women, Deeper in Debt: Women and Student Loans, p.31-33 (May 22, 2020) (hereinafter "Deeper in Debt") (analysis of data from U.S. Department of Education, National Center for Education Statistics, "Baccalaureate and Beyond Longitudinal Study 2008/12").

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 7

26.27.  Default rates are also higher for borrowers of color than for white borrowers. Four years after graduating with a Bachelor's degree, 7.6% of Black borrowers, 5.7% of Hispanic borrowers, and 2.4% of non-Hispanic white borrowers have defaulted on their loans.[12]

27.28.  Default rates are higher for women than for men. Among borrowers who complete a Bachelor's degree and do not go on to graduate school, women (3.5 percent) are more likely to default their student loans after earning a bachelor's degree and not enrolling in any other degrees programs, than men (2.4 percent).[13]

**2.    Oregonians' Educational Debt Tracks the National Numbers**

28.29.  As of March 31, 2020, Oregonians owed $19.4 billion in federal student loan debt.[14]

29.30.  Of borrowers whose loans entered repayment in 2016, 11.5% were in default by 2019, the fourteenth highest rate of the fifty states.[15]

**B.    Social Security Retirement and Disability Are Vital Anti-Poverty Programs**

**1.    Social Security is a Critical Part of the National Safety Net**

30.31.  The Old-Age, Survivors, and Disability Insurance ("OASDI") program provides monthly benefits designed to replace the loss of income due to retirement, disability, or death.

---

[12] Judith Scott-Clayton, & Jing Li, *Black-white disparity in student loan debt more than triples after graduation*, Economic Studies at Brookings, Vol. 2, No. 3, at 3 (October 20, 2016).

[13] Deeper in Debt, *supra* n.11, at 31-32.

[14] U.S. Department of Education, Federal Student Aid, *available at* https://studentaid.gov/data-center/student/portfolio (Portfolio by Location spreadsheet).

[15] U.S. Department of Education, "FY 2016 Official Cohort Default Rates by State/Territory" (calculated August 4, 2019), https://www2.ed.gov/offices/OSFAP/defaultmanagement/staterates.pdf.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 8

31.32.  The most common OASDI Old-Age Insurance Benefits, also known as Social Security Retirement benefits, are available to individuals who reach retirement age (based on their year of birth) and have a sufficient work history. 42 U.S.C. § 402(a).

32.33.  OASDI Disability Benefits, also known as SSDI benefits, are available to individuals who are unable to earn a minimum income due to a disability. 42 U.S.C. § 423(a).

33.34.  Social Security Retirement and SSDI are "earned" benefits, which means that the amount a person generally receives depends on how much the person has paid into the Social Security trust funds. Through payroll taxes, most workers in the U.S. pay a percentage of their wages into these funds.[16]

34.35.  Under certain circumstances, Social Security Retirement and SSDI are paid to individuals other than the contributing worker, for example to spouses, children, and surviving relatives. 42 U.S.C. § 402(b)-(d). In such cases, the amount the spouse, child, or surviving relatives receives is based on the amount the contributing worker paid into the trust funds.

35.36.  According to the U.S. Census Bureau, Social Security is the nation's most important anti-poverty program. Social Security lifted 27.2 million Americans out of poverty in 2018.[17]

36.37.  Social Security benefits are the primary source of income for many older Americans. Almost nine out of ten individuals age 65 and older receive Social Security

---

[16] *See* Social Security Administration, "Old-Age & Survivors Insurance Trust Fund", https://www.ssa.gov/OACT/ProgData/describeoasi.html; Social Security Administration, "Disability Insurance Trust Fund", https://www.ssa.gov/OACT/ProgData/describedi.html.

[17] U.S. Census Bureau, "The Supplemental Poverty Measure: 2018", https://www.census.gov/library/publications/2019/demo/p60-268.html.

benefits.[18] Among elderly Social Security beneficiaries, 21% of unmarried couples and 45% of unmarried individuals receive at least 90% of their income from Social Security, while 50% of married couples and 70% of unmarried individuals receive at least half their income from Social Security.

37.38.  SSDI dramatically cuts the poverty rate of non-senior workers with disabilities. Without SSDI, the poverty rate for this group would reach nearly 50%; with SSDI, it drops to 20%.[19]

38.39.  Social Security Retirement and SSDI have their strongest anti-poverty effects for women and people of color. In 2014:

    a.  55% of women aged 65 of older, compared to 48% of men the same age, lived in families receiving at least half their income from Social Security Retirement or SSDI;[20]

    b.  32.5% of non-Hispanic Black Americans against 65 and older, compared to 24.1% of non-Hispanic White Americans the same age, received at least 90% of their income from Social Security Retirement or SSDI;[21] and

---

[18] Social Security Administration, *Fact Sheet*, *available at* https://www.ssa.gov/news/press/factsheets/basicfact-alt.pdf.

[19] Social Security Administration, "Characteristics of Noninstitutionalized DI and SSI Program Participants, 2010 Update" (Feb. 2014), *available at* https://www.ssa.gov/policy/docs/rsnotes/rsn2014-02.html.

[20] Social Security Administration, "The Importance of Social Security Benefits to the Income of the Aged Population", Social Security Bulletin, Vol. 77, No. 2, at 7-8 (2017), *available at* https://www.ssa.gov/policy/docs/ssb/v77n2/v77n2p1.html.

[21] *Id.*

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 10

c.  31.2% of Hispanic Americans age 65 and older, compared to 24.1% of non-

Hispanic White Americans the same age, received at least 90% of their income

from Social Security Retirement or SSDI.[22]

**2.  Social Security Lifts Hundreds of Thousands of Oregonians Out of Poverty**

~~39.~~40.  Oregon tracks the national numbers described above. 871,988 Oregonians

received Social Security benefits in 2018.[23]

~~40.~~41.  In 2014, an estimated three in ten Oregonians 65 or older relied on Social Security

as their only source of income.[24]

~~41.~~42.  Between 2016 and 2018, nearly 200,000 older Oregonians were lifted out of

poverty by Social Security. Without Social Security, a third of Oregonians age 65 and older

would live in poverty; with Social Security, the percentage drops to 6.9%.[25]

**C.  The Treasury Offset Program, Student Loan Debt and Social Security Benefits**

**1.  Overview of Options for Relief from Student Loan Debt**

~~42.~~43.  Most federal student loans have conditions designed to help borrowers who are

---

[22] *Id.*

[23] Social Security Administration, Publication No. 13-11700, *Annual Statistical Supplemental to the Social Security Bulletin*, at 5.87, Table 5.J2 (2019), *available at* https://www.ssa.gov/policy/docs/statcomps/supplement/2019/supplement19.pdf.

[24] American Association of Retired People, Social Security: 2014 Oregon Quick Facts, https://www.aarp.org/content/dam/aarp/research/surveys_statistics/general/2014/ssqf/Social-Security-2014-Oregon-Quick-Facts-AARP-res-gen.pdf)

[25] Kathleen Romig, Center on Budget and Policy Priorities, *Social Security Lifts More Americans Above Poverty Than Any Other Program* (updated Feb. 20, 2020), *available at* https://www.cbpp.org/sites/default/files/atoms/files/10-25-13ss.pdf

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 11

struggling with repayment.

43.44.  For example, borrowers with a "total and permanent disability" ("TPD") that prevents them from working may apply to discharge the most common types of federal student loans.  20 U.S.C. § 1087; 34 C.F.R. § 685.213 (Direct Loan); 34 C.F.R. § 682.402 (FFEL).

44.45.  TPD discharge has existed since passage of the Higher Education Act of 1965. However, many eligible borrowers are unaware of TPD discharge, and only a fraction manage to successfully complete the application and monitoring process to have their loans forgiven.[26]

45.46.  A borrower may "rehabilitate" most types of federal student loans to cure a default. 20 U.S.C. § 1078-6; 34 C.F.R. § 685.211(f) (Direct Loan); 34 C.F.R. § 682.405 (FFEL). Rehabilitation reduces monthly payments to a "reasonable and affordable" amount based on the borrower's financial situation, and can be as low as $5 per month. Id. In order to complete rehabilitation, the borrower must make a certain number of on-time monthly payments. Id.

46.47.  Effective August 14, 2008, a federal student loan may be rehabilitated only once. 34 C.F.R. § 685.211(f)(12) (Direct Loan); 34 C.F.R. § 682.405(a)(4) (FFEL).

47.48.  For most federal student loans, borrowers who are not in default can qualify for a variety of income-driven repayment plans, including Income Contingent Repayment ("ICR"),[27]

---

[26] 2016 GAO Report, *supra* n.10, at 26-38; *see also* 84 Fed. Reg. 44677 (Aug. 21, 2019), "Discharging the Federal Student Loan Debt of Totally and Permanently Disabled Veterans" (ordering Department of Education to facilitate TPD discharge for eligible veterans because "[t]he process has been overly complicated and difficult").

[27] ICR is available for Direct Loans only. 20 U.S.C. § 1087e(d)(1)(D), (e); 34 C.F.R. § 685.209(b).

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 12

Income-Based Repayment ("IBR"),[28] Pay As You Earn ("PAYE"),[29] and Revised Pay As You Earn ("REPAYE").[30]  The primary differences between these plans are which types of federal student loans are eligible, and how minimum monthly payments are calculated.

48.49.  Eligibility for income-driven repayment depends on the type of loan, the date(s) of loan disbursement(s), and the borrower's financial circumstances.[31]

49.50.  In general, an income-driven repayment plan requires a borrower to make affordable payments (based on borrower's income, as low as $0 per month) for a certain number of years (usually 20-25), and then forgives any debt that remains outstanding.[32]

50.51.  During income-driven repayment, the borrower continues to owe the debt, and interest continues to accrue.  Each year, the borrower must provide updated financial information to recertify their eligibility for income-driven repayment.  At the end of an income-driven repayment plan, any debt that is forgiven is treated as income for tax purposes.[33]

### 2.    Overview of the Offset Process

51.52.  As noted above, the Treasury Offset Program ("TOP") has conducted administrative offsets of Social Security benefits to recover federal student loan debt since 2001.

---

[28] 20 U.S.C. § 1098e; 20 U.S.C. § 1087e(d)(1)(E) (Direct Loan); 20 U.S.C. § 1078(b)(9)(A)(v) (FFEL); 34 C.F.R. § 685.221 (Direct Loan); 34 C.F.R. § 682.215 (FFEL).

[29] 20 U.S.C. § 1087e(d)(1)(D), (e); 34 C.F.R. § 685.209(a).

[30] 20 U.S.C. § 1087e(d)(1)(D), (e); 34 C.F.R. 685.209(c).

[31] *See* U.S. Department of Education, Federal Student Aid, "Repayment Plans", https://studentaid.gov/manage-loans/repayment/plans.

[32] *Id.*

[33] *Id.*

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 13

Ex. 1  13 of 40

52.53.  The Department of Education generally can use TOP to collect any delinquent federal student loan debt, even debt that is many decades old. 31 U.S.C. § 3716(e); 20 U.S.C. § 1091a(a).[34]

53.54.  The Department of Education does not have to obtain a court judgment or writ of garnishment before it commences an administrative offset through TOP. 31 U.S.C. § 3716(a) (noting a federal agency only needs to attempt to collect a debt pursuant to 31 U.S.C. § 3711(a) before pursuing administrative offset).[35]

54.55.  Generally, administrative offsets are mandatory. The Department of Education must notify the Department of Treasury about any "legally enforceable nontax debt that is over 120 days delinquent . . . for purposes of administrative offset". 31 U.S.C. § 3716(c)(6)(A); *see also* 31 C.F.R. § 285.4(d) (allowing submission of debts delinquent for fewer than 120 days if otherwise eligible for administrative offset).

55.56.  The Department of Education starts the offset process by sending a notice to the borrower ("the Education notice") that it intends to collect the debt through offset, including possible offset of Social Security benefits. 31 U.S.C. § 3716(a)(1); *see also* 31 C.F.R. § 285.5(d)(6)(ii)(A) (noting the Education notice must be sent at least 60 days before submission of debt to Treasury for purposes of administrative offset).

---

[34] The Higher Education Technical Amendments of 1991 eliminated all statutes of limitations for collection of most federal student loans. Pub. L. 102-26, 105 Stat. 123 (1991). The Food, Conservation and Energy Act of 2008 eliminated all statutes of limitations for administrative offsets. Pub. L. 110-234, 122 Stat. 1482 (2008).

[35] *See also* Treasury, Bureau of the Fiscal Service, Treatise on Federal Nontax Debt Collection Law, Part III:53 (April 2018), *available at* https://www.fiscal.treasury.gov/files/dms/debt-treatise-partIII.pdf (noting it is not clear "what constitutes a sufficient attempt to collect, but sending a demand letter probably suffices").

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 14

56.57.  Many borrowers never receive the Education notice because the Department of Education frequently sends it to old, outdated addresses.

57.58.  The Education notice does not mention that borrowers with disabilities may be entitled to discharge of their loans.

58.59.  Although the Education notice mentions "rehabilitation", "consolidation", and "mutually agreeable payment" programs, it does not define those terms.  The Education notice does not state anywhere that borrowers' financial circumstances will be taken into account with respect to monthly payment amounts or that borrowers may be entitled to pay as little as $5 per month (for rehabilitation) or $0 per month (for income-driven repayment).

59.60.  The Department of Education has a process for granting financial hardship exemptions or reductions to individuals whose Social Security benefits are offset to repay their federal student loan debt. *See* 31 C.F.R. § 285.5(d)(12). Financial hardship exemptions and reductions are wholly discretionary.

60.61.  The Education notice contains no information about the financial hardship application process.[36]

61.62.  The Education notice directs the borrower to call the Department of Education to avoid offset. But many borrowers reasonably conclude such a call would be futile. The Department of Education contracts with loan servicers who engage in aggressive collection tactics such as calling borrowers' cell phones multiple times per day.[37] These servicers often

---

[36] 2016 GAO Report, *supra* n.10, at 41-42 (noting Department of Education only provides information about hardship exemptions if requested by the borrower).

[37] Ann Carrns, *Consumer Groups Take Aim at Navient for Phone Harassment*, N.Y. Times (June 16, 2017), https://www.nytimes.com/2017/06/16/your-money/consumer-groups-accuse-navient-phone-harassment.html.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 15

pressure borrowers to make payments without mentioning their potential eligibility for affordable, income-driven repayment options. After months or years of such collection activity, many borrowers do not understand that the loan servicer is separate from the Department and believe that calling to ask about repayment options would subject them to more of the same pressure to make payments they cannot afford.

63.    The timing of the Education notice is tied to the date a loan enters default.  As a result, Education sends the Education notice to many borrowers years or even decades before the date they beginning receiving Social Security benefits and are actually subject to offset.

62.    No fewer than 60 days after it sends the Education notice, the Department of Education provides information about delinquent debt to Treasury. 31 C.F.R. § 285.5(d)(5)-(6). Treasury then attempts to match the debt with money that federal agencies are paying to the debtor, such as a Social Security payment. 31 C.F.R. § 285.4(c).

63.64.  When a match is found, Treasury sends a notice to the borrower ("the Treasury notice") that his or her Social Security payment will be offset to repay federal student loan debt to the Department of Education. 31 U.S.C. § 3716(c)(7); 31 C.F.R. § 285.4(f).

64.65.  Many borrowers never receive the Treasury notice because Treasury frequently sends it to old, outdated addresses. 31 C.F.R. § 285.5(d)(5)(ii) (creditor agency must provide Treasury with "Debtor's address last known to the creditor agency").

65.66.  The Treasury notice says that a borrower may prevent the offset by contacting the Department of Education and "meet[ing] its requirements." It does not mention rehabilitation, income-driven repayment options, or financial hardship exemptions. The Treasury notice does not indicate in any way that there are programs that takes financial circumstances into account or

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 16

specify that borrowers may be entitled to pay as little as $5 or $0 per month.

66.67.  After sending the Treasury notice, Treasury intercepts (offsets) a portion of the borrower's next Social Security payment. After Treasury takes a fee ($12.50 per monthly offset in 2020), it gives the balance of the offset to the Department of Education, which applies it to the borrower's debt. 31 U.S.C. § 3716(c)(4); 31 C.F.R. § 285.4(G).

67.68.  The DCIA protects the first $9,000 per year ($750 per month) of Social Security benefits from offset. 31 U.S.C. § 3716(c)(3)(A)(ii); The offset amount is the difference between the person's benefit and $750 or 15% of the total benefit amount, whichever is less. *Id.* The chart below shows how this calculation works for individuals receiving different amounts of Social Security benefits.

///

///

///

| Monthly Social Security Benefit | Excess of Monthly Benefit over $750 | 15% of Monthly Benefit | Maximum Offset Amount |
|---|---|---|---|
| $1,000 | $250 | $150 | $150 |
| $850 | $100 | $127.50 | $100 |

69.    Treasury will initiate an offset only if the amount offset equals or exceeds $25 per month. This means that a borrower is subject to offset of her Social Security benefit if her monthly payment is $775 per month or more.

68.70.  Treasury continues to offset the maximum allowable amount from the borrower's

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 17

Ex. 1  17 of 40

Social Security benefit each month. Each year, when Social Security benefits increase, the offset automatically increases as well.

69.71.  Each month that it offsets a Social Security benefit, Treasury sends a notice to the borrower titled "What Happened to My Payment?" The notice states, "If you agree that you owe the debt, you do not need to do anything." It directs borrowers interested in "resolv[ing]" the debt to contact the Department of Education. The notice does not mention rehabilitation, income-driven repayment options, or financial hardship exemptions, not does it indicate in any way that there are programs that takes financial circumstances into account or specify that borrowers may be entitled to pay as little as $5 or $0 per month.

70.72.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act provided temporary relief to federal student loan borrowers. The CARES Act paused all collection activity on delinquent federal student loans, including offset of Social Security benefits, from mid-March 2020 through September 30, 2020. Pub. L. 116-136, Sec. 3513(e)(3).

71.73.  These protections have been extended through September 30, 2021.[38] Absent new action by Congress or the President, offset of Social Security benefits to repay federal educational debt will resume October 1, 2021.On August 8, 2020, President Trump issued a memorandum to Secretary DeVos, directing the Department of Education to "continue the temporary cessation of payments and the waiver of all interest on student loans held by the

---

[38] *See* White House Briefing, Pausing Federal Student Loan Payments (Jan. 20, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/01/20/pausing-federal-student-loan-payments/; Federal Student Aid, Coronavirus and Forbearance Info for Students, Borrowers, and Parents, https://studentaid.gov/announcements-events/coronavirus ("COVID-19 Emergency Relief Flexibilities Extended Through at Least Sept. 30, 2021") (last visited May 24, 2021).

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 18

~~Department of Education until December 31, 2020."[39]~~

~~72.    Absent new action by Congress or the President, offset of Social Security benefits to repay federal educational debt will resume January 1, 2021. Pub. L. 116-136, Sec. 3513(a) (suspends payments due for student loans through September 30, 2020), Sec. 3513(e) (suspends involuntary collection, including offsets, for same period as stated in subsection 3513(a)).~~

### 3.    Offset of Benefits to Repay Educational Debt Deepens Poverty

#### a.    Nationally, Offsets to Repay Student Loans Push Increasing Numbers of Social Security Recipients into Poverty

~~73.~~74.  In 2002, 36,000 Americans had their Social Security benefits reduced to repay federal student loan debt.[40]

~~74.~~75.  In 2004, fewer than 10,000 people nationally had their Social Security benefit reduced below (or pushed further below) the poverty line by administrative offset to collect student loan debt.[41]

~~75.~~76.  By 2015, the number of Americans whose Social Security benefits were offset to repay educational debt had grown to more than 173,000 people.[42]—a nearly 500% increase since Social Security benefits became subject to offset.

~~76.~~77.  By 2015, nearly 70,000 people nationally had their Social Security benefits reduced below (or pushed further blow) the poverty line by administrative offset to collect

---

~~[39] Presidential Memorandum on Continued Student Loan Payment Relief During the COVID-19 Pandemic (Aug. 8, 2020), *available at* https://www.whitehouse.gov/presidential-actions/memorandum-continued-student-loan-payment-relief-covid-19-pandemic//.~~

[40] 2016 GAO Report, *supra* n.10, at 11.

[41] *Id.* at 27.

[42] *Id.* at 11.

student loan debt—a sevenfold increase in just over a decade.[43] This means that about 40% of people whose Social Security was reduced to repay educational debt in 2015 had their benefits reduced below the poverty line.

77.78.  The DCIA set the "floor" for Social Security benefits protected from offset at $750 per month. In 1996, the federal poverty level for a household of one in the contiguous 48 states was $645 per month.[44] For a household of one, $750 per month was, in 1996, 116% of the federal poverty level.

78.79.  Since 1996, Congress has not raised the amount of Social Security benefits protected from offset.

79.80.  In 2020, the federal poverty level for a household of one is $1,063 per month.[45] A person with $750 per month in income falls at about 70% of the federal poverty level.

80.81.  If $750 had been indexed to increase at the same rate as the poverty threshold, in 2020 the protected benefit amount would be $1,236.[46]

81.82.  As alleged above, the Department of Education has a program for requesting a financial hardship exemption or reduction, but it does not provide information about that program in any of its notices or on its website. In order to apply, the borrower must know about

---

[43] *Id.* at 27.

[44] U.S. Department of Health and Human Services, "Annual Update of the HHS Poverty Guidelines" (Mar. 4, 1996), https://aspe.hhs.gov/1996-poverty-guidelines-federal-register-notice.

[45] U.S. Department of Health and Human Services, "Poverty Guidelines" (January 8, 2020), https://aspe.hhs.gov/poverty-guidelines.

[46] Plaintiffs reached this number using the Bureau of Labor Statistics' Consumer Price Index inflation calculator, which is available online at https://www.bls.gov/data/inflation_calculator.htm.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 20

the program and request an application.[47]

82.83.  Despite the fact that a large share of Social Security recipients live in or near poverty, less than 10% of all borrowers subject to offset obtained a financial hardship exemption or reduction in 2015.[48]

83.84.  Nationally, A a third of borrowers age 50 and older in the remain in default five years after becoming subject to offset.[49]

84.85.  Nearly half of borrowers who are 50 or older at the time they become subject to offset owe debt on loans that are at least 20 years old.

85.86.  Social Security offsets represent a small share of the Department of Education's collections. Nearly 75% of the offsets are applied to Treasury Offset Program fees and interest. Many borrowers' offsets go *entirely* to interest and fees, and their loan balances increase while they are subject to offset.[50]

  **b. In Oregon, Offset of Social Security Benefits to Repay Student Loan Debt Exacerbates Poverty**

86.87.  According to information provided by the Treasury Department in response to a Freedom of Information Request, in 2019, 4,893 Oregonians had their Social Security benefits offset to repay federal student loan debt. Those offsets reduced Oregonian's Social Security benefits by $5,024,150.98 that year.

---

[47] 2016 GAO Report, *supra* n.10, at 41.

[48] *Id.* at 40-41.

[49] *Id.* at 17.

[50] *Id.*

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 21

87.88.  If the DCIA's protected-income threshold of $750 had been indexed to inflation, a majority of Oregonians subject to offset in 2019 would not have had their benefits reduced because their monthly benefit amount is lower than $1,236.

88.89.  In 2019, the poverty rate in Oregon was 12.6%.[51]

89.90.  According to documents provided by the Treasury Department in response to a Freedom of Information Request, despite this poverty rate, in 2019, fewer than 4% of Oregonians whose Social Security benefits were offset to repay federal student loan debt obtained a financial hardship exemption or reduction from the Department of Education.

90.91.  Offset of Social Security benefits to collect federal student loan debt is pushing thousands of senior Oregonians and Oregonians with disabilities into (or deeper into) poverty.

D.    **The Named Plaintiffs**

1.    **Plaintiff Jennifer Booth**

91.92.  Plaintiff Jennifer Booth is a 70-year-old grandmother with custody of her young grandson.

92.93.  Ms. Booth's sole sources of income are Social Security retirement and $200 per month in cash assistance from the Temporary Assistance for Needy Families program. Since 2019, her Social Security retirement check has been reduced to repay her federal student loans. In March 2020, Ms. Booth's income of $951.40 per month placed her household at 66% of the federal poverty level.

93.94.  In 2007, Ms. Booth—who had previously worked as an administrative assistant in

---

[51] U.S. Census Bureau, https://www.census.gov/quickfacts/OR.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 22

the U.S. Air Force—decided to go back to school to become a teacher. She took out a total of $10,750 in federal loans so she could pursue an undergraduate teaching degree at California State University Fullerton.

94.95.  Ms. Booth, who was 57 when she enrolled in school, had great difficulty completing the coursework, which was all online, due to her age and limited experience with computers. She stopped pursuing a degree after one year.

95.96.  Ms. Booth's loan debt accrues 6.8% interest per year. The amount she owes has nearly tripled, to $27,924. Ms. Booth also owes $4,203.54 on a parent PLUS loan that she took out in 2000 so that her daughter could attend Santa Barbara Business College. In all, she owes more than $32,000 on her loans, which are now held by the Department of Education and serviced by Educational Credit Management Corporation ("ECMC").

96.97.  In 2015, Ms. Booth successfully "rehabilitated" her loans by paying $5 per month for nine months. At that point, she should have qualified for a $0 per month income-based or -driven repayment plan.

97.98.  No one at ECMC explained to her how to transition from rehabilitation to a low-dollar income-based plan. Ms. Booth's loans instead were set on a regular repayment schedule, at a level Ms. Booth could not afford. The loans returned to default status.

98.99.  If someone had offered Ms. Booth the opportunity to avoid default by continuing to pay $5 per month (or by paying $0 per month), she would have taken it.

99.100.Ms. Booth received written notices from Treasury in January and February 2019 that her Social Security benefit would be reduced by up to 15% because of her debt to the Department of Education. If those notices had informed her she could avoid offset and qualify

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 23

Ex. 1  23 of 40

for a $0 per month payment plan, she would have followed up to enroll in such a program.

~~100.~~101.       Defendants first offset Ms. Booth's Social Security retirement check to repay her federal educational debt in June 2019. At that time, her Social Security benefit amount was $794, and defendants offset the statutory maximum of $44.

~~101.~~102.       Later in 2019, Ms. Booth's benefit amount increased to $859 and then to $870. The offset amount increased to $109 and then to $120, meaning that she consistently received only $750 per month.

~~102.~~103.       In January 2020, Ms. Booth's Social Security benefit increased to $884, just above the threshold where the statutory formula permits offset down to $750. In the first few months of 2020, Ms. Booth's was offset $132.60 (15% of $884), and she received $751.40 per month.

~~103.~~104.       Prior to April 2020, staff from ECMC called Ms. Booth multiple times per day, including early in the morning and late in the evening, to pressure her to pay more toward her student loan debt. She has received as many as six calls in a single day. In these calls, ECMC did not explain to Ms. Booth that could qualify for a $0 per month repayment plan based on her income. Instead, ECMC staff made accusatory statements, such as, "I don't know why you went to school at all if you weren't going to pay it back."

105.   ECMC stopped calling in April 2020, after Congress passed the CARES Act and temporarily suspended all collection activity on federally held student loans.

~~104.~~

106.   With such limited income, it is a daily struggle for Ms. Booth to keep herself and her grandson housed, clothed, and fed. Because of the CARES Act relief, she now receives the

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 24

**Formatted:** Indent: Left:  0.5",  No bullets or numbering

full amount of her Social Security Retirement check each month: $884. The additional $132.60

per month has made a big difference and has helped her keep the household safe and stable.

107.    In October 2020, with the assistance of counsel, Ms. Booth consolidated her loans

and enrolled in a $0 per month income-driven repayment plan. The payment plan will begin as

soon as COVID-19 student borrower protections end.

~~105.~~108.    Ms. Booth must annually recertify her eligibility for income-driven

repayment. If she does not successfully recertify each year, she will be automatically placed in a

ten-year level repayment plan, with monthly payments she cannot afford.

**2.    Plaintiff David Becker**

~~106.~~109.    Plaintiff David Becker is a 59-year-old single man and a veteran of the

U.S. National Guard.

~~107.~~110.    Mr. Becker began receiving SSDI in April 2018, on the basis of colon

cancer and bladder cancer. He has undergone multiple surgeries, including a colostomy, to treat

these disabling conditions.

~~108.~~111.    SSDI is Mr. Becker's sole source of income. His SSDI check has been

reduced to $750 to repay his federal student loans the entire time he has received SSDI. This

income of $750 per month places Mr. Becker at 70.53% of the poverty level.

~~109.~~112.    In 1988, Mr. Becker took out a $2,625 loan to attend the Columbia

College of Business. He planned to pursue a degree in accounting, but did not complete the

program.

~~110.~~113.    Mr. Becker's loan debt accrues 8% interest per year. As of June 5, 2020,

Mr. Becker owes a total of $10,330.73 on this loan: $3,469.51 in unpaid principal (which

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 25

increased due to capitalized interest when the guaranty agency paid an insurance claim to the lender) and $6,861.22 in accrued interest.

111.114.    The Department of Education reports that it sent Mr. Becker notice he could be subject to offset in July 2012. Mr. Becker, who was not receiving Social Security benefits in 2012, does not recall if he received this notice.

112.115.    In September 2012, the Department of Education referred Mr. Becker's debt to Treasury for offset.

113.116.    Mr. Becker qualified for $851 per month in SSDI in April 2018. His monthly benefit was offset by $101 per month to the $750 per month level.

114.117.    In 2019, Mr. Becker's benefit increased to $877 per month. The monthly offset increased to $127 per month, and he continued to receive $750 per month.

115.118.    In 2020, Mr. Becker's benefit increased to $891 per month in 2020, the offset increased to $133.65 per month (15% of the benefit amount), and he began receiving $757.35 per month.

116.119.    Between April 2018 and March 2020, Mr. Becker's SSDI benefits were offset $2,310.30 to repay his student loan debt. Of that amount, $259.30 was applied to Treasury fees and $2,051.00 was applied to interest. These offsets have not reduced the principle of Mr. Becker's loans.

117.120.    Mr. Becker has been low-income most of his adult life. He was homeless for many years. After qualifying for 2018, he was able to find stable housing with the assistance of a local housing nonprofit. Even with a generous housing subsidy, It is very difficult for Mr. Becker to makes end meet on $757 per month.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 26

121.   Since April 2020, Mr. Becker's SSDI check has not been offset because of the CARES Act protections. With the additional $133.65 per month, it is much easier for him to pay for rent, food, and medical costs.

122.   In June 2020, with the assistance of counsel, Mr. Becker applied to rehabilitate his student loan.

123.   Although he has been informed through this lawsuit that Education has found him ineligible for rehabilitation, Mr. Becker never received a written denial of his application to rehabilitate his loan.

124.   In July 2020, Mr. Becker received a statement informing him that he had been approved for a $5 per month payment plan. This payment plan will never remove Mr. Becker's loans from default, even if he makes indefinite on-time payments.

118.

**3.     Plaintiff Clifford Thompson**

125.   Plaintiff Clifford Thompson is a 71-year-old single man, an artist, and an art teacher.

126.   Until he was in his 40s, Mr. Thompson primarily worked in industries requiring hard physical labor, such as construction and logging. He sustained multiple, serious work-related injuries to his back and knees.

127.   About 25 years ago, Mr. Thompson was found to be disabled due to, among other disabling conditions, a combination of the physical impairments caused by his work-related injuries. He began receiving SSDI.

128.   About 20 years ago, Mr. Thompson—who was then in his early 50s—decided to

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 27

go to back to college. He took out federal student loans to attend the University of Wisconsin, where he earned a Bachelor's of Fine Arts in film and a second Bachelor's of Fine Arts in art education. He hoped to obtain full-time work and exit the SSDI system.

129.    After graduating, Mr. Thompson moved back to his home state of Oregon. Although he worked intermittently as a substitute teacher and in short-term teaching positions, he was not able to obtain a permanent, full-time teaching position because he did not have a Master's Degree.

130.    In 2012, Mr. Thompson enrolled in graduate school at Northwest Christian University ("NCU"). He took out three federal student loans totaling $32,053 in 2012 and 2013. He left the program when he was just five credits short of earning his Master's Degree.

131.    Mr. Thompson had previously consolidated his Wisconsin loans, which totaled $42,183.71 at the time of consolidation, after graduation from the University of Wisconsin. He was approved for a $0 per month income-contingent repayment plan for his consolidated loans. He did not understand that his NCU loans were not part of this repayment plan. By the time Mr. Thompson realized his mistake, his NCU loans were ineligible for income-contingent repayment options because they were in default.

132.    Mr. Thompson's loan servicers began aggressively contacting him about his debts. He received multiple calls per day, sometimes as many as ten in a single 24-hour period.

133.    Mr. Thompson eventually contacted HELPS, which now represents him in all communications with debt collectors.

134.    As of March 25, 2021, the outstanding balance on Mr. Thompson's federal student loans is $122,114.13.


FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 28


Ex. 1  28 of 40

135.    Mr. Thompson transitioned off SSDI and onto Social Security retirement at age 62.

136.    Social Security retirement is Mr. Thompson's sole source of income.

137.    For many years, Mr. Thompson's monthly Social Security benefit was too low to be subject to offset because it was below the $750 level protected by statute and/or below the $775 minimum level at which Treasury will conduct an offset.

138.    In 2018, Mr. Thompson's monthly benefit increased. From March to December 2018, Treasury offset $39 of Mr. Thompson's monthly $789 payment, leaving him with $750 per month.

139.    In 2019, Mr. Thompson's monthly benefit increased to $811 and Treasury offset $61 per month, leaving him with $750 per month.

140.    In 2020, Mr. Thompson's monthly benefit increased to $824. Until COVID-19 borrower protections froze collection of student loans, Treasury offset $74 per month, leaving him with $750 per month.

141.    In 2021, Mr. Thompson's monthly benefit increased to $839. He currently receives the full monthly benefit because of the COVID-19 borrower protections. Without those protections, Treasury would offset $89 per month, leaving him with $750 per month.

142.    There are no government benefits available to help Mr. Thompson make up for the money he loses to offset. Mr. Thompson receives $118 per month in SNAP (food stamps) and a federal rent subsidy. These benefits are calculated based on the total, pre-offset amount of his Social Security benefit. They are *not* calculated based on the lower amount he actually receives.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 29

143.    $89 per month makes a big difference for Mr. Thompson. During the years his Social Security benefit was offset, he had to rely on food banks to have enough to eat. With the additional $89 each month, he can afford groceries.

### 4.    Plaintiff Edward Lewis

144.    Plaintiff Edward Lewis is a sixty-four year old man who lives with his wife in Salem, Oregon, and financially supports his adult daughter due to her disability-related special needs.

145.    Before he incurred federal student loan debt, Mr. Lewis worked for more than twenty years in high-tech manufacturing plants that produced goods like silicon wafers and integrated circuits.

146.    Around 2005, Mr. Lewis lost his job because the manufacturing plant relocated to outside the United States. He could not find similar employment.

147.    From 2005 to 2007-07, Mr. Lewis relied on unemployment insurance, Trade Adjustment Assistance, and two Federal Family Education Loans totaling $5,784.00, to attend Chemeketa Community College between to retrain as a building inspector.

148.    In 2007, at age 50, Mr. Lewis obtained a degree in building inspection technology. However, he was unable to find work in this field.

149.    In 2008, hoping to increase his chances of obtaining a job, Mr. Lewis took out two Federal Direct Student Loans totaling $6,799.00 to attend Western Oregon University.

150.    Later in 2008, Mr. Lewis withdrew from Western Oregon University because he needed to work to support his family. However, he could only obtain part-time and low-wage jobs.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 30

151.    In 2009, Mr. Lewis lost his home in a foreclosure, and his family became homeless.

152.    After the foreclosure, Mr. Lewis moved to Portland to work in a high-tech manufacturing plant. However, he lost this job in 2012 because the manufacturing plant relocated to outside the United States. He could not find similar employment.

153.    In 2013, Mr. Lewis also returned to Chemeketa Community College to study in the Fire Prevention program. He did not take out any additional federal student loans.

154.    While studying Fire Prevention, Mr. Lewis worked various low-wage jobs, and made a few payments toward his federal student loans. He planned to repay the federal student loans after obtaining a higher-wage job as a fire investigator or fire prevention specialist.

155.    In 2015, at age 58, Mr. Lewis obtained a degree in Fire Prevention. However, he was unable to find work in this field.

156.    In 2015, Mr. Lewis' family once again became homeless. Relatives allowed his family to live with them on a small farm for a few years.

157.    After 2015, Mr. Lewis continued to work low-wage jobs. However, as the years passed, Mr. Lewis became less capable of sustaining physically demanding work like seasonal jobs at food processing plants.

158.    Around the end of 2017, Mr. Lewis joined the Easterseals Senior Community Service Employment Program, which provides training opportunities to help find better employment. He continues to receive a modest stipend each month for participation in this program.

159.    In 2019, Mr. Lewis' family could no longer live with their relatives. Mr. Lewis

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 31

and his wife began living in their vehicle, but they were able to find housing for their daughter.

160.    Around April 2019, Mr. Lewis began to receive early Social Security Retirement benefits.  His monthly benefit was $1,000.

161.    From June to December 2019, Treasury offset $150 per month of Mr. Edwards' Social Security benefit, leaving him with $850 per month.

162.    In 2020, Mr. Edwards' monthly benefit increased to $1,016.  Until COVID-19 borrower protections froze collection of student loans, Treasury offset $152.40 per month, leaving him with $863.60 per month.

163.    Around April 2020, right after COVID-19 borrower protections began, Mr. Lewis and his wife began renting a small studio apartment.

164.    In 2021, Mr. Lewis' monthly benefit increased to $1,029. He currently receives the full monthly benefit because of the COVID-19 borrower protections. Without those protections, Treasury would offset $154.38 per month, leaving him with $874.62 per month.

165.    $154.38 per month makes a big difference for Mr. Edwards because he is still struggling to obtain more stable housing and to support his family.

166.    As of April 15, 2021, the outstanding balance on Mr. Thompson's federal student loans is $23,485.99.

## 5.    Plaintiff HELPS

167.    Plaintiff Help Eliminate Legal Problems for Seniors and Disabled ("HELPS") is a 501(c)(3) charitable organization and nonprofit law firm. HELPS represents low-income seniors and individuals with disabilities under the Fair Debt Collection Practices Act by

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 32

stopping debt collector harassment by phone or mail, educates seniors and people with

disabilities about their rights, and provides referrals to full-scope legal representation as needed.

120.168.    HELPS is a national organization that assists clients throughout the

country. HELPS was founded in Oregon, is based in Salem, and regularly provides

representation to Oregonians.

121.169.    HELPS frequently hears from clients because a creditor is taking action to

attempt to collect educational debt. In February 2020, HELPS had 253 active cases involving

student loans. Nearly a third of these clients reside in Oregon.

122.170.    When a client has a private student loan, HELPS protects them by

informing the creditor that Social Security income is federally protected from creditors.

123.171.    Unlike with clients who owe educational debt to private lenders, HELPS

cannot stop collection of federal student loan debt by informing the creditor that Social Security

benefits are protected. Instead, HELPS guides individuals with qualifying disabilities through the

discharge process, and helps clients ineligible for discharge to rehabilitate their loans and enroll

in income-based repayment plans. These are time-consuming steps that prevent HELPS from

assisting other clients and diminish the program's limited resources. HELPS would not have to

engage in these efforts if Social Security benefits were not subject to offset.

### V.  CLASS ACTION ALLEGATIONS

124.172.    This action is brought and may properly be maintained on behalf of

Plaintiffs and a class consisting of all residents of Oregon who have had Social Security benefits

offset by Defendants to recover student loan debt.

125.173.    This proposed class satisfies the numerosity, commonality, typicality, and

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 33

adequacy requirements of those provisions.

///

**A.      Numerosity – Fed. R. Civ. P. 23(a)(1)**

~~126.~~174.      The class in this suit is so numerous that joinder of all of its members is impracticable.

~~127.~~175.      In 2019, 4,893 Oregonians had their Social Security benefits offset to repay federal student loan debt.

**B.      Commonality – Fed. R. Civ. P. 23(a)(2)**

~~128.~~176.      The relief sought is common to all class members, and common questions of law and fact exist as to all class members.

~~129.~~177.      The questions of law and fact common to the class predominate over any questions affecting solely individual members of the action, and include:

    a.   Whether offset of Social Security benefits to repay federal student loan debt violates class members' right to equal protection of the laws;

    b.   Whether the process for offsetting Social Security benefits to repay federal student loan debt violates class members' right to due process; and

    c.   Whether the offset of class members' Social Security benefits is unlawful agency action under the Administrative Procedure Act.

**C.      Typicality – Fed. R. Civ. P. 23(a)(3)**

~~130.~~178.      Plaintiffs' claims are typical of the class.

~~131.~~179.      A ruling in plaintiffs' favor on the equal protection and APA claims would benefit every class member. Such a ruling would stop the offset of class members' Social

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 34

Security benefits and entitle them to restitution.

~~132.~~    A ruling in plaintiffs' favor on the due process claims would also benefit every class member. Such a ruling would give class members the right to receive information about options that would allow them to reduce or avoid the offset of their Social Security benefits.

180. ~~##~~

> **Formatted:** Indent: Left:  0", First line:  0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at:  0.19" + Indent at:  0.44"

**D.**    **Adequacy – Fed. R. Civ. P. 23(a)(4)**

~~133.~~181.    Plaintiffs will fairly and adequately protect the interests of the class. There are no known conflicts among class members, all of whom have a similar interest in asserting their constitutional rights.

~~134.~~182.    Plaintiffs are represented by counsel with experience in pursuing class action litigation, particularly in the areas of benefits and constitutional challenges to federal and state statutes or regulations, and who will properly fulfill their duties as class counsel.

**E.**    **Rule 23(b)**

~~135.~~183.    Plaintiffs' claims for injunctive and declaratory relief are appropriate for certification under Rule 23(b)(2) because defendants are offsetting class members' Social Security benefits on grounds that apply generally to the class and final injunctive and declaratory relief is appropriate respecting the class as a whole.

~~136.~~184.    Plaintiffs' claims for restitution of Social Security benefits unlawfully withheld are appropriate for certification under Rule 23(b)(3). Whether class members are entitled to restitution depends on resolution of the classwide questions described in Section V.B, above. The fact that many class members have few resources and little information regarding their rights means that many of them are unable to prosecute lawsuits to protect their Social

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 35

Security benefits. Having those questions resolved in a single consolidated action is the best way to fairly and efficiently adjudicate the controversy.

137.185.        Concentrating this litigation in one forum, as opposed to separate individual cases in various courts, will promote judicial economy, consistency and parity among the claims of individual class members. Allowing this lawsuit to proceed as a class action will permit the class of similarly situated persons to prosecute their common claims in a single forum simultaneously and efficiently.

138.186.        Plaintiffs are not aware of any difficulty that could be encountered in the management of this action that would preclude its maintenance as a class action.

### VI.    FIRST CLAIM FOR RELIEF

**Fifth Amendment to the U.S. Constitution (Equal Protection)**

139.187.        Plaintiffs incorporate the above allegations of paragraphs 1 to 116above allegations, above, as if fully set forth herein.

140.188.        Oregonians who owe educational debt to the federal government are similarly situated to Oregonians who owe educational debt to private lenders.

141.189.        A person who has private educational debt cannot have her Social Security benefits reduced to repay that debt. By contrast, a person who has federal educational debt is subject to offset of Social Security benefits. Whether a person who owes student loan debt will lose a portion of her Social Security benefits hinges solely on whether her debt is to a private or public lender.

142.190.        The federal government has not merely given public debts precedence over private debts or used a different enforcement mechanism for collecting federal student loan

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 36

debt; it has made an otherwise protected source of income subject to offset solely because the debt is to a public entity.

143.191.    This discrimination violates the Constitution's guarantee of equal protection of the laws under *James v. Strange*, 407 U.S. 128, 139 (1972).

144.192.    Plaintiffs and class members are entitled to a declaration that the offset of their Social Security benefits is illegal, an injunction preventing the offset of future Social Security benefits to repay student loan debt, and restitution of all amounts Defendants have wrongfully offset from Plaintiffs' and class members' Social Security benefits to repay student loan debt.

### VII.    SECOND CLAIM FOR RELIEF

### Fifth Amendment to the U.S. Constitution

### (Due Process – Failure to Provide Adequate Notice and Pre-Deprivation Hearing)

145.193.    Plaintiffs incorporate the above allegations of paragraphs 1 to 122, above, as if fully set forth herein.

146.194.    Social Security benefits are property rights subject to constitutional due process protection.

147.195.    Federal law requires both the Department of Education and the Department of the Treasury to provide written notice to debtors prior to using the Treasury Offset Program to collect federal student loan debt. 31 U.S.C. § 3716(a), 3716(c)(7).

148.196.    Despite these requirements, some debtors such as Plaintiffs and other members of the class members receive no advance notice that their Social Security benefits will be reduced.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 37

149.197.    Even when class members receive the notices, they are constitutionally
inadequate because they do not inform the recipients that they may be able to avoid or reduce the
amount or duration of the offset through one or more of the following programs:

 a. Financial hardship exemption from offset or reduction of offset;

 b. The opportunity to rehabilitate the loan, with monthly payment amounts as low as
  $5 per month; or

 c. Income-driven repayment plans with $0 per month payment amounts for
  individuals living near or below the poverty line.

150.198.    Plaintiffs and class members are entitled to a declaration that the offset of
their Social Security benefits is illegal, an injunction preventing the offset of future Social
Security benefits to repay student loan debt, and restitution of all amounts Defendants have
wrongfully offset from Plaintiffs' and class members' Social Security benefits to repay student
loan debt.

## VIII. THIRD CLAIM FOR RELIEF

### (Administrative Procedure Act – Unlawful Agency Action)

151.199.    Plaintiffs incorporate the above allegations of paragraphs 1 to 128, above,
as if fully set forth herein.

152.200.    Because offset of Social Security benefits to repay federal educational
debt violates Plaintiffs' rights to equal protection and due process as set forth above, each offset
is unlawful agency action that must be set aside under 5 U.S.C. § 706.

153.201.    Plaintiffs and class members are entitled to a declaration that the offset of
their Social Security benefits is illegal, an injunction preventing the offset of future Social

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 38

Security benefits to repay student loan debt, and restitution of all amounts Defendants have wrongfully offset from Plaintiffs' and class members' Social Security benefits to repay student loan debt.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all members of the proposed class, pray for:

(a)   An order designating this action as a class action and appointing Plaintiffs' attorney as counsel for the class;

(b)   A declaration that Defendants' practices as alleged herein have violated and continue to violate equal protection and due process guarantees of the Fifth Amendment to the U.S. Constitution and § 706 of the Administrative Procedure Act as to the individual Plaintiffs and as to the class;

(c)   An order and judgment preliminarily and permanently ordering Defendants, their subordinates, agents, employees, representatives, and all others acting or purporting to act on their behalf, from offsetting Plaintiffs' and class members' Social Security benefits to repay federal student loan debt;

(d)   Restitution of amounts improperly withheld from Plaintiffs and class members;

(e)   An award of reasonable attorney fees pursuant to 28 U.S.C. § 2412(d)(1)(A) and 42 U.S.C. § 1988, and costs and disbursements incurred herein; and

(f)   Such other and further legal and equitable relief as this Court deems just and proper.

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 39

DATED this ___ day of _____
2021~~20210~~.

OREGON LAW CENTER

_____
Stephen Walters, OSB No. 801200
swalters@oregonlawcener.org
Edward Johnson, OSB No. 980190
edjohnson@oregonlawcenter.org
Beth Englander, OSB No. 980190
benglander@oregonlawcenter.org
Kelsey Heilman, OSB No.140348
kheilman@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Ave, Suite 812
Portland, OR  97204
(503) 473-8324

Gerald Lunn, OSB No. 153768
glunn@oregonlawcenter.org
OREGON LAW CENTER
230 NE 2nd Ave, Suite F
Hillsboro OR 97124
(503) 640-4115

Of Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT – 40