IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JENNIFER BOOTH; DAVID
BECKER; CLIFFORD THOMPSON;
EDWARD LEWIS; HELPS,

               Plaintiffs,

     v.

MIGUEL CARDONA, in his capacity
as Secretary of the United States
Department of Education; JANET
YELLEN, in her capacity as Secretary
of the United States Department of
the Treasury,

               Defendants.

Civ. No. 6:20-cv-01433-AA

**OPINION & ORDER**

_____

AIKEN, District Judge.

     This case comes before the Court on a Motion to Dismiss Plaintiffs' First
Amended Complaint filed by Defendants. ECF No. 59. Defendants move to dismiss
pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). This Court concludes
that this matter is appropriate for resolution without oral argument. For the reasons
set forth below, the motion is GRANTED and this case is DISMISSED.

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

     A motion to dismiss brought pursuant to Federal Rule of Civil Procedure
12(b)(1) addresses the court's subject matter jurisdiction. The party asserting

jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his or her claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations even though the allegations are formally sufficient. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979-80 (9th Cir. 2007) (court treats motion attacking substance of complaint's jurisdictional allegations as a Rule 12(b)(1) motion); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("[U]nlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or other evidence properly before the court." (internal quotation omitted)). "A district court may hear evidence regarding jurisdiction and resolve factual disputes where necessary" and "[n]o presumptive truthfulness attaches to plaintiff's allegations." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (internal quotation marks and citations omitted, alterations normalized). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Id.* (internal quotation marks and citation omitted).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1994). A motion to dismiss based on sovereign immunity is a motion to dismiss for lack of subject matter jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## II.    Rule 12(b)(6)

To survive a motion to dismiss under the federal pleading standards, a

pleading must contain a short and plain statement of the claim and allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a pleading does not require "detailed factual allegations," it needs more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 677-78. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 678.  Legal conclusions without any supporting factual allegations do not need to be accepted as true.  *Id.*

## BACKGROUND

### I.    Statutory and Regulatory Framework

### A. Title IV of the Higher Education Act

Under Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 *et seq.*, the U.S. Department of Education ("Education") is permitted to enter into agreements with institutions of higher learning permitting students to receive federal grants and loans to pay the cost of attendance.  These include the William D. Ford Federal Direct Loan Program ("Direct Loan Program"), 20 U.S.C. § 1087a *et seq.*, which allows students to receive Direct Loans from the federal government for their education, and the Federal Family Education Loan ("FFEL"), 20 U.S.C. § 1071 *et seq.*, under which "financial institutions make low-interest loans to students or their

families, which are guaranteed by state or non-profit guaranty agencies that are reinsured by the United States, through the Department of Education." *Student Loan Mktg. Ass'n v. Riley*, 907 F. Supp. 464, 467 (D.D.C. 1995).[1]  The HEA was enacted to increase educational opportunities and "assist in making available the benefits of postsecondary education to eligible students . . . in institutions of higher learning." 20 U.S.C. § 1070(a).

"The terms of federal loans are set by law, not the market, so they often come with benefits not offered by private lenders.  Such benefits include deferment of repayment until after graduation, loan qualification regardless of credit history, relatively low fixed interest rates, income-sensitive repayment plans, and—for undergraduate students with financial need—government payment of interest while the borrower is in school." *Biden v. Nebraska*, 600 U.S. ___, 484, 143 S. Ct. 2355, 2362 (2023).  Recipients of Direct Loans are generally not obliged to make payments while enrolled in school at least half time.  34 C.F.R. §§ 685.207(b), (c).  Federal student loans may also be consolidated into a Direct Consolidation Loan.  34 C.F.R. § 685.220.

Federal student loan borrowers are provided with options to temporarily postpone or reduce their payments if they have financial difficulties.  34 C.F.R. §§ 682.210 (deferment of FFEL loans), 685.204 (deferment of Direct Loans), 682.211 (forbearance of FFEL loans), 685.205 (forbearance of Direct Loans).  Income-based repayment options are also available.  *See, e.g.,* 20 U.S.C. §§ 1098e, 1087e(d)(1)(E).

---

[1] FFELs are no longer issued but many remain outstanding.  *Biden v. Nebraska*, 600 U.S. ___ , 484, 143 S.Ct. 2355, 2362 (2023).

There are also options for loan forgiveness, discharge, or cancellation. *See, e.g.,* 20 U.S.C. § 1087j (Direct Loan cancellation for teacher); 34 C.F.R. § 685.219 (Public Service Loan Forgiveness Program); 20 U.S.C. §§ 1087(a) (discharge of loans for borrowers who become "permanently and totally disabled."), (c) (discharge in cases of school closure).

Education has implemented additional programs and initiatives since 2020 in response to the COVID-19 pandemic. Loan payments were paused and interest rates set to 0% from March 13, 2020 through September 1, 2023. Lowery Decl. ¶ 15. ECF No. 59-3. On April 6, 2022, Education "launched the 'Fresh Start' initiative, a one-time temporary program that allows borrowers with defaulted federal student loans to reenter 'current' repayment status and have other federal student aid benefits and protections restored." *Id.* at ¶ 16. "To help borrowers successfully return to repayment, Education also created a temporary 'on-ramp' period through September 30, 2024," which "protects borrowers who miss or make a late payment during the first year of repayment." *Id.* at ¶ 21. "If the borrower misses a payment during this period, the loan servicer will automatically apply for a forbearance so that the account will not be considered delinquent and will be made current" and "[m]issed payments will not lead to negative credit reporting and the loan will not be sent for collection during this period." *Id.*

**B. Treasury Offset Program and Social Security Benefits**

The Debt Collection Improvement Act ("DCIA"), 31 U.S.C. § 3701 *et seq.*, requires the heads of executive agencies to "try to collect a claim of the United States

Government for money or property arising out of the activities of, or referred to, the agency." 31 U.S.C. § 3711(a)(1). Administrative offset is one of the mechanisms available for the collection of such debts. 31 U.S.C. § 3716(a). With administrative offset, the debt or claim is offset by other federal payments that might be made to the debtor. Federal agencies are required to refer "past due, legally enforceable nontax debt that is over 120 days delinquent" to the Secretary of the Treasury "for purposes of administrative offset." 31 U.S.C. § 3716(c)(6)(A).

The United States Department of the Treasury ("Treasury") operates the Treasury Offset Program ("TOP"), which is the "centralized offset of Federal payments to collect delinquent, nontax debts owed to Federal agencies." 31 C.F.R. § 285.5(a)(1). As part of TOP, Treasury matches payments to be made to a payee with debts owing to a creditor agency. 31 C.F.R. § 285.5(c)(2). "When a match occurs, and all other requirements for offset have been met, the disbursing official shall offset the payment to satisfy, in whole or in part, the payee's debt to the extent allowed by law." *Id.* "Offsets will continue until the debt, including any interest, penalties, and administrative costs, is paid in full or otherwise resolved to the satisfaction of the creditor agency." 31 C.F.R. § 285.5(f)(1). The offset amount, less fees, is then transmitted to the creditor agency. 31 C.F.R. § 285.5(i)(1).

Before a debt is submitted to Treasury for offset, the creditor agency must comply with certain procedures. A debt may only be referred for administrative offset after giving the debtor: (1) written notice of the type and amount of the claim, the intention of the agency to collect the claim by administrative offset, and an

explanation of the rights of the debtor under the DCIA; (2) an opportunity to inspect and copy the records of the agency related to the claim; (3) an opportunity for a review of the decision of the agency related to the claim; and (4) and an opportunity to make a written agreement with the heard of the agency to repay the amount of the claim. 31 U.S.C. §§ 3716(a)(1)-(4).  The creditor agency must provide written notification "at least sixty days prior to submitting the debt and at the debtor's most current address known to the agency, of the nature and amount of the debt, the intention of the creditor agency to collect the debt through offset, and an explanation of the rights of the debtor," and "[a]n opportunity for a review within the creditor agency of the determination of indebtedness, including the opportunity to present evidence that all or part of the debt is not past-due or legally enforceable."  31 C.F.R. §§ 285.5(d)(6)(ii)(A), (C).  The creditor agency must certify to Treasury that "the debt is past-due, legally enforceable, and that the creditor agency has provided the debtor with notice and an opportunity for a review in accordance with the provisions of 31 U.S.C. § 3716(a) and other applicable law."  31 C.F.R. § 285.4(d).

Treasury then notifies that debtor in writing of the date when the offset will commence and of "the type of payment that will be offset; the identity of the creditor agency which requested the offset and a contact point within the creditor agency that will handle concerns regarding the offset."  34 C.F.R. § 285.4(f)(1).  Treasury also provides notices when the offset occurs, informing the debtor of "the type and amount of the payment that was offset; the identity of the creditor agency which requested the offset; and a contact point within the creditor agency that will handle concerns

regarding the offset." 34 C.F.R. § 285.4(f)(2). "Non-receipt" of these notices "shall not impar the legality of the administrative offset." 34 C.F.R. § 285.4(f)(3).

"The availability of offsets against Social Security benefits is limited, as the Social Security Act . . . makes Social Security benefits, in general, not 'subject to execution, levy, attachment, garnishment, or other legal process.'" *Lockhart v. United States*, 546 U.S. 142, 144 (2005) (quoting 42 U.S.C. § 407(a)). However, the Supreme Court has held that "the Debt Collection Improvement Act clearly makes Social Security benefits subject to offset." *Id.* at 145.

The offset of Social Security benefits is limited and the first $9,000, or $750 per month, is protected from offset. 31 U.S.C. § 3716(c)(3)(A)(ii). In addition, the offset cannot exceed 15% of the monthly covered benefit. 31 C.F.R. § 285.4(e)(1)(ii). As a result, the offset must be the lesser of 15% of the covered monthly benefit payment or the amount, if any, by which the covered benefit payment exceeds $750. *Id.*

## II.    Factual Background

Plaintiff Help Eliminate Legal Problems for Senior and Disabled ("HELPS") is a 503(c)(3) nonprofit organization headquartered in Salem, Oregon. FAC ¶ 15. ECF No. 45.

Defendant Miguel Cardona is the Secretary of the U.S. Department of Education and is sued in his official capacity. FAC ¶ 16.

Defendant Janet Yellen is the Secretary of the U.S. Department of the Treasury and is sued in her official capacity. FAC ¶ 17.

The individual Plaintiffs Jennifer June Booth, David Becker, Clifford

Thompson, and Edward Lewis are Oregon residents who have had their Social Security benefits offset to repay federal student loan debt. The specifics of their individual cases are set forth in greater detail below. FAC ¶¶ 11-14.

### A. Jennifer June Booth

Jennifer Booth has federal student loan debt. FAC ¶ 94. Booth's debt went into default and Booth was notified that her debt had been referred to Treasury for administrative offset. *Id.* at ¶¶ 100-01. Booth's Social Security benefits, which she relies upon for income, were reduced through administrative offset. *Id.* at ¶¶ 93, 101-03. In October 2020, Booth consolidated her loans and enrolled in a $0 per month income-driven repayment plan. *Id.* at ¶ 107. Booth is current on her loans and is not subject to TOP because her loans are not in default. Lowery Decl. ¶ 28.

### B. David Becker

David Becker has federal student loan debt. FAC ¶ 112. Becker's debt went into default and Education reports that it sent notification of potential administrative offset to Becker, although Becker does not recall if he received them. *Id.* at ¶ 114. Becker's debt was referred to Treasury for administrative offset in September 2012 and Becker's Social Security benefits, which he relies upon for income, were offset for the debt. *Id.* at ¶¶ 111, 115-19. Becker applied to rehabilitate his loans, and in July 2020, Becker was approved for a $5 per month payment plan. *Id.* at ¶ 124. On July 3, 2023, Becker's loans were removed from default status through the Fresh Start program. Lowery Decl. ¶ 32. On July 10, 2023, Becker was notified that his monthly payment was $0. *Id.* Becker's loans are not in default and are not subject to TOP.

*Id.*

### C. Clifford Thompson

Clifford Thompson has federal student loan debt.  FAC ¶¶ 128, 130.
Thompson's debt went into default and his Social Security benefits, which he relies
upon for income, were subject to administrative offset.  *Id.* at ¶¶ 131, 136, 138-40.  On
June 22, 2022, Thompson was informed that his application to consolidate his loans
had been approved and he would pay $0 per month under his new payment plan.
Lowery Decl. ¶ 37.  Thompson's loans are not in default and he is not subject to TOP.
*Id.*

### D. Edward Lewis

Edward Lewis has federal student loan debt.  FAC ¶¶ 147, 149.  Lewis's loans
went into default and his Social Security benefits, on which he relies for income,
became subject to administrative offset.  *Id.* at ¶¶ 160-62.  On April 18, 2023, Lewis
was approved for a $0 per month repayment plan.  Lowery Decl. ¶ 42.  Lewis's loans
are not in default and are not subject to TOP.  *Id.*

## DISCUSSION

The individual Plaintiffs, on behalf of themselves and other similarly situated
Oregonians and HELPS, seek declaratory and injunctive relief against Defendants to
end administrative offsets of Social Security benefits to repay federal student loan
debt.  In addition, the individual Plaintiffs, on behalf of themselves and other
similarly situated Oregonians, seek restitution for sums taken from their Social
Security benefits in to repay federal student loan debt.  FAC ¶¶ 7-8.

Plaintiffs bring claims for (1) violation of the Fifth Amendment right to equal protection; (2) violation of the Fifth Amendment right to due process; and (3) unlawful agency action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.[2] Defendants move to dismiss all claims.

## I.    Mootness

As part of their prayer, Plaintiffs seek an "order and judgment preliminarily and permanently ordering Defendants, their subordinates, agents, employees, representatives, and all other acting or purporting to act on their behalf, from offsetting Plaintiffs' and class members' Social Security benefits to repay federal student loan debt."  FAC Prayer for Relief (c).  Plaintiffs also seek a declaration that the administrative offset of Social Security benefits to repay federal student loan debt violates Fifth Amendment equal protection and due process rights, as well as the APA.

None of the individual Plaintiffs' loans are in default and all four have been placed on $0 per month payment plans.  As a result, none of the individual Plaintiffs are currently subject to administrative offset of their Social Security benefits to pay their student loan debt.  Defendants assert that this renders the individual Plaintiffs' claims for declaratory and injunctive relief moot.

Under Article III of the U.S. Constitution, the judicial power extends to "Cases" and "Controversies."  Courts cannot decide legal disputes in the absence of such a

---

[2] Since the commencement of this litigation, the Department of Education has significantly revised the notices that it sends to defaulted borrowers to provide more complete information about programs and options for borrowers facing default.  As a result, Plaintiffs have withdrawn their claims for injunctive relief concerning the content of the notices sent to defaulted borrowers.

case or controversy. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2012). This limitation requires that a plaintiff have "an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Article III requires that an actual controversy exist "through all states of the litigation." *Already, LLC*, 568 U.S. at 91 (internal quotation marks and citation omitted). "A case becomes moot, and therefore no longer a 'Case' or 'Controversy' for purposes of Article III, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* Put another way, a case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiff's particular legal rights." *Alvarez v. Smith*, 558 U.S. 87, 93 (2009).

Here, Plaintiffs seek injunctive and declaratory relief. "A request for injunctive relief remains live only so long as there is some present harm left to enjoin," and becomes moot "once subsequent events have made clear the conduct alleged as the basis for the requested relief could not reasonably be expected to recur." *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 864 (9th Cir. 2017) (internal quotation marks and citation omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects," and a plaintiff "who cannot reasonably be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction." *Id.* (internal quotation marks and citations omitted, alterations normalized).

With respect to the claim for declaratory relief, the test for mootness is

"whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Bayer*, 861 F.3d at 867 (internal quotation marks and citations omitted). "Stated another way, the central question is whether changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Id.* (internal quotation marks and citations omitted, alterations normalized). Significantly, "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." *Id.* at 868.

Here, there is no dispute that the individual Plaintiffs are no longer in default or having their Social Security benefits offset to pay their student loan debt. In addition, as the individual Plaintiffs' monthly payments are $0, there is no reasonable expectation that they will reenter default.

Plaintiffs contend that their claims are subject to the "inherently transitory" exception to mootness. This is a "limited exception" to the "requirement that a named plaintiff with a live claim exist at the time of class certification." *United States v. Sanchez-Gomez*, 584 U.S. 381, 389 (2018). "The exception applies when the pace of litigation and the inherently transitory nature of the claims at issue conspire to make that requirement difficult to fulfill." *Id.* The doctrine applies "where it is certain that other persons similarly situated will continue to be subject to the challenged conduct and the claims raised are so inherently transitory that the trial court will not have

even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Genesis Healthcare Corp. v. Symcyzk*, 569 U.S. 66, 76 (2013) (internal quotation marks and citation omitted). "The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course," and the doctrine "has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim." *Id.* at 76-77.

Here, the claims are based on the use of administrative offset of Social Security benefits for defaulted federal student loan debt. This is not a fleeting condition—the FAC alleges that many of the Plaintiffs were in default and subject to offset for years before the filing of the original Complaint. The claims would have remained in default and subject to offset but for the individual Plaintiffs' affirmative decision to take advantage of options such as consolidation or reduced payment programs offered by the Department of Education. These decisions were reasonable and plainly in the best interests of the individual Plaintiffs, but Plaintiffs cannot avail themselves of the inherently transitory exception when the cessation of the challenged conduct is the result of Plaintiffs' own decisions. *See Caselman v. Pier 1 Imports (U.S.), Inc.*, Case No.: 14-CV-0283-LHK, 2015 WL 106063, at *4 (N.D. Cal. Jan. 7, 2015) ("The Court, for its part, has found no authority suggesting that a named plaintiff may invoke the inherently transitory exception where the basis for mootness is the named plaintiff's voluntary resignation from the defendant's employ."); *Jang v. Asset*

*Campus Housing, Inc.*, Case No. LA CV15-01067 JAK (PLAx), 2016 WL 11742737, at

*12, (C.D. Cal. Aug. 23, 2016) (holding that the plaintiff's voluntary decision to move

did not satisfy the inherently transitory exception to mootness).[3]

These distinctions—that the period of the challenged conduct is not necessarily

of limited and finite duration and that it was terminated by Plaintiffs' own action—

set the facts of this case apart from the situations in which this limited exception has

been found to apply.  *See, e.g., Genesis Healthcare Corp.*, 569 U.S. at 76 (discussing,

by way of example, the application of the inherently transitory exception to a

hypothetical claim challenging the constitutionality of temporary pretrial

detentions).  The Court concludes that the inherently transitory exception does not

apply and the named individual Plaintiffs' claims for declaratory and injunctive relief

are moot.  In addition to mooting their individual claims, this will prevent Plaintiffs

from maintaining claims on behalf of the putative class.  *See O'Shea v. Littleton*, 414

U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class

establishes the requisite case or controversy with the defendants, none may seek

relief on behalf of himself or any other member of the class.")

## II.    Sovereign Immunity

Defendants assert that the claims for injunctive, declaratory, and monetary

relief are barred by sovereign immunity.  The United States, as sovereign, is immune

from suit unless it waives its immunity and consents to be sued.  *FDIC*, 510 U.S. at

475.  A waiver of the federal government's sovereign immunity "cannot be implied

---

[3] Conceptually, a claim that is mooted by the plaintiff's own voluntary action would not be "inherently" (*i.e.*, by its very nature) transitory.

but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Any such waiver will be "strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). "A necessary corollary of this rule is that when Congress attaches conditions to legislation waving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota*, 461 U.S. 273, 287 (1983). "Unlike actions involving private parties, where a cause of action is authorized against the federal government, the available remedies are not those that are appropriate, but only those for which sovereign immunity has been expressly waived." *Ordonez v. United States*, 680 F.3d 1135, 1138 (9th Cir. 2012) (internal quotation marks and citation omitted). This immunity extends to agencies and officers of the United States. *Munns v. Kerry*, 782 F.3d 402, 412 (9th Cir. 2015). The plaintiff bears the burden to establish the existence of a waiver and, in the absence of a waiver, "courts have no subject matter jurisdiction over cases against the [federal] government." *Id.* Sovereign immunity "applies alike to causes of action arising under acts of Congress and to those arising from some violation of rights conferred upon the citizen by the Constitution." *Lynch v. United States*, 292 U.S. 571, 582 (1934).

Plaintiffs assert that a waiver of sovereign immunity for their claims may be found in the APA, 5 U.S.C. § 702, which provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be

dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, an a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) *confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.*

5 U.S.C. § 702 (emphasis added).

The highlighted portion Section 702 contains a significant limitation on the waiver of sovereign immunity contained in the APA: "By its own terms, § 702 does not apply to claims for 'money damages' or claims 'expressly or impliedly forbidden' by another statute granting consent to suit." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998).

### A. Injunctive and Declaratory Relief

As noted, the APA's limitations on the waiver of sovereign immunity apply when the claim seeks relief that is expressly or impliedly forbidden by another statute granting consent to suit. Defendants assert that such a bar may be found in the HEA, 20 U.S.C. § 1082(a)(2), which provides that in "the performance of, and with respect to, the functions, powers, and duties, vested in him" by the HEA, the Secretary of Education may:

[S]ue and be sued in any court of record of a State having general jurisdiction or in any district court of the United States, and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy, and action instituted under this subsection by or against the Secretary shall survive

notwithstanding any change in the person occupying the office of Secretary shall survive notwithstanding any change in the person occupying the office Secretary or any vacancy in that office; *but no attachment, injunction, garnishment, or other similar process, mense or final, shall be issued against the Secretary or property under the Secretary's control*, and nothing herein shall be construed except litigation arising under this part form the application of section 509, 517, 547, and 2679 of Title 28.

20 U.S.C. § 1082(a)(2) (emphasis added).

By the plain language of the statute, the specific prohibition on injunctions against the Secretary of Education contained in § 1082(a)(2) of the HEA precludes the application of the waiver of sovereign immunity contained in Section 702 of the APA.[4] *See Lawrence v. U.S. Dep't of Educ.*, No. 1:18-cv-01756-JRS-DLP, 2019 WL 4749966, at *3 (S.D. Ind. Sept. 30, 2019) ("Although the Administrative Procedures Act ('APA') waives sovereign immunity in claims for injunctive relief against the United States, claims cannot be brought if 'any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.' 4 U.S.C. § 702. Here, the HEA [20 U.S.C. § 1082(a)(2) expressly forbids the injunctive relief plaintiff seeks."); *Noble v. Spellings*, No. CV 08-749-MO, 2009 WL 10691051, at *1 (D. Or. Jan. 1, 2009) ("In its plain language, § 1082 prohibits the issuance of injunctions against the Secretary in relation to her powers and duties under the HEA. The language of this provision is unambiguous . . . Thus, in the absence of a clear indication to the contrary, I must presume that Congress intended to prohibit the issuance of

---

[4] The parties agree that any waiver, or lack of waiver, with respect to Plaintiffs' claims for injunctive relief would apply with equal force to Plaintiffs' claims for declaratory relief. *See* Pl. Resp. 21 n.7 ("Plaintiffs agree that the analysis of whether the HEA is an impediment to Plaintiffs' claims is the same with respect to declaratory relief as to injunctive relief.").

injunctions against the Secretary."), *aff'd Noble v. Duncan*, 386 Fed. App'x 698, 699 (9th Cir. 2010) ("The district court properly dismissed Noble's claims seeking injunctive relief because he failed to show that the Secretary acted ultra vires in this matter." (citing 20 U.S.C. § 1082)).

The Court must construe waivers of sovereign immunity narrowly and resolve the scope of any waiver in favor of the sovereign.  Here, the Secretary of Education was acting within his authority under the HEA when he referred Plaintiffs' debts to Treasury for administrative offset and so the HEA's anti-injunction bar applies and Plaintiffs' claims for injunctive and declaratory relief fall outside the waiver of sovereign immunity provided by the APA.  Accordingly, the Court concludes that Plaintiffs claims for injunctive and declaratory relief are barred by sovereign immunity and must be dismissed.

### B. Monetary Claims

In their prayer, Plaintiffs seek "restitution of all amounts Defendants have wrongfully offset from Plaintiffs' and class members' Social Security benefits to repay student loan debt."  FAC ¶ 192, Prayer (d).  Defendants assert that this relief is prohibited as to the Secretary of the Treasury by 31 U.S.C. § 3716(c)(2)(A), which provides that "[n]either the disbursing official nor the payment certifying agency shall be liable . . .  for the amount of the administrative offset on the basis that the underlying obligation, represented by the payment before the administrative offset was taken, was not satisfied[.]"

As to the Secretary of Education, Defendants assert that no waiver of sovereign

immunity has been identified.  The waiver provided by the APA extends to actions "seeking relief other than money damages."  5 U.S.C. § 702.[5]

Plaintiffs, in turn, point to the Supreme Court's decision in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), in which the Court held that reimbursement for Medicaid payments owed by the federal government to the states were "specific relief" because the plaintiffs were seeking to enforce a statutory mandate which called for the payment of money.  Here, Plaintiffs assert that they are seeking "specific relief" in the form of reimbursement for the money that was redirected through administrative offset.  In *Bowen*, the Supreme Court determined that the reference to "other than money damages" in § 702 involved a distinction between "damages" which are "sums[s] of money used as compensatory relief," and "specific remedies" which "are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled."  *Bowen*, 487 U.S. at 895.  In *Bowen*, the plaintiff state sought to enforce a statutory entitlement to receive withheld federal grant money and the Court determined that was a suit for specific relief and the fact that specific entitlement was money did not alter that determination.  *Id.* at 900-01.  "The State's suit . . . is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather it is a suit seeking to enforce a statutory mandate itself, which happens to be one for payment of money."

---

[5] The characterization of the monetary relief sought in the FAC as "restitution" does not alter this analysis.  In *California v. United States*, 104 F.3d 1086 (9th Cir. 1997), the Ninth Circuit declined to credit such distinctions when considering the scope of the APA's waiver of sovereign immunity: "While reliance on 5 U.S.C. § 702 is not well taken because the statute specifically exempts 'money damages,' regardless of its terminology, the 'restitution' or 'reimbursement' sought is monetary compensation for the monetary damages each [plaintiff] has suffered."  *Id.* at 1095.

*Id.* at 900 (emphasis in original).

The Ninth Circuit has endorsed a reading of *Bowen*, as "holding that the Administrative Procedures Act does not allow claims for money damages, but allow monetary relief when a plaintiff seeks to enforce a statutory mandate." *Dzu Cong Tran v. Napolitano*, 497 Fed. App'x 724, 727 (9th Cir. 2012). When a plaintiff seeks "compensation," rather than the enforcement of a statutory mandate," their claims will fall outside of the bounds of *Bowen*. *See Harger v. Dep't of Labor*, 569 F.3d 898 (9th Cir. 2009) ("Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." (internal quotation marks and citation omitted)).

Under 31 C.F.R. § 285.5(e)(9), "[w]hen an offset occurs, the debtor has received payment in full for the underlying obligation represented by the payment." In other words, the portion of Plaintiffs' Social Security benefits subject to administrative offset was not simply taken by Defendants, it was used to satisfy delinquent obligations owing to the Department of Education. Plaintiffs already received the benefit of the payments in the form of debt service and awarding that money to Plaintiffs would plainly amount to monetary damages.

In their Response, Plaintiffs assert that they are seeking to recover fees collected by the Department of the Treasury in the course of performing the administrative offsets, rather than the full amount of the offset. Pl. Resp. 21, n.8. This is not what is alleged in the FAC, however. *See* FAC ¶¶ 8 (seeking to recover

money offset "to repay federal student loan debt,"), 192 (seeking restitution of "all
amounts" offset "to repay student loan debt,"), 198 (seeking "restitution of all
amounts" offset "to repay student loan debt"), 201 (seeking same).  In the FAC,
Plaintiffs seek to recover "amounts unlawfully intercepted from their Social Security
benefits to repay federal student loan debt," rather than fees incurred in the execution
of the administrative offset.  FAC ¶ 8; *see also* Pl. Am. Mot. for Certification of the
Class, at 15 ("As restitution, Plaintiffs seek *the full Social Security benefits* to which
they were entitled and which they would have received but for the unconstitutional
offsets Conducted by Defendants." (emphasis added)).  ECF No. 58.  Additionally, as
Defendants point out, those fees were not charged to Plaintiffs, but to the Department
of Education.  *See* 31 C.F.R. §§ 285.5(j) ("Fiscal Service may charge a fee sufficient to
cover the full cost of implementing the centralized offset program . . . Fiscal Service
may deduct the fees from amounts collected by offset or may be the creditor
agencies.").  Ultimately, this distinction does not alter the analysis because Plaintiffs
are not seeking to enforce a statutory mandate that compels payment of money to
them, as was the case in *Bowen*. The relief they seek amounts to monetary damages.
As a result, it falls beyond the bounds of the APA's waiver of sovereign immunity and
must be dismissed.

## III.    Treasury as Defendant

Defendants also assert that the Secretary of the Treasury is not a proper
Defendant in this action because she was exercising a non-discretionary function of
her office in the operation of the administrative offsets.  The Eleventh Circuit has

held as much in *Johnson v. Dep't of the Treasury*, 300 Fed. App'x 860 (11th Cir. 2008): "Treasury . . . had no statutory authority over the debt, nor any role in determining whether or not the debt was valid or whether [the plaintiff's] benefit payment should be offset. Rather, once the [creditor agency] certified the debt to Treasury, Treasury was obligated to offset [the plaintiff's] disability payment in satisfaction of the debt." *Id.* at 862. "Further, it is the creditor agency, not the disbursing agency that is required to ensure that the debtor receives due process under the law." *Id.* at 862-63; *see also Hughes v. United States*, Civil Action No. 14-0998 2015 WL 4477961, at *3 (E.D. La. July 22, 2015) (holding "the proper party to address in the case of offset is the agency to which the debtor owes the debt, not the Treasury Department.")

The Court finds the reasoning of *Johnson* and *Hughes* persuasive and concludes that the Secretary of the Treasury is not a proper Defendant for Plaintiffs' claims.

Because the individual Plaintiffs' claims are moot and because the injunctive, declaratory, and monetary relief that Plaintiffs seek are barred by sovereign immunity, and because the Secretary of the Treasury is not a proper defendant in this action, Defendants' motion to dismiss must be granted and the Court need not reach the remaining issues raised in Defendants' motion. Plaintiffs cannot plead around the mootness of their claims or Defendants' sovereign immunity, and so dismissal shall be without leave to amend.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF No. 59, is
GRANTED.  This case is DISMISSED without further leave to amend.  All other
pending motions are MOOT.  Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___9th___ day of July 2024.


 /s/Ann Aiken 
ANN AIKEN
United States District Judge